William J. Mahan, Respondent, v. George W. Baile and Elfine Dale Baile, Appellants.—No. 40629.—216 S. W. (2d) 92.

Division Two, December 13, 1948.

Rehearing Denied, January 7, 1949.

*R. B. Caldwell, Stanley Garrity, John W. Oliver* and *Caldwell, Downing, Noble & Garrity* for appellants.

*Charles Rubins, Chester B. Kaplan* and *Walter A. Raymond* for respondent.

628

[93] BARRETT, C.—This appeal involves the trial of an intersectional automobile collision in which the plaintiff recovered a judgment of $8,000.00. The defendants admit "that the plaintiff made a submissible case for a jury." Consequently we are concerned with but three problems: (1) whether the court erred in overruling the challenges to its jurisdiction, (2) whether there was prejudicial error in the instructions and (3) whether the verdict was excessive.

The defendants' challenge of the court's jurisdiction is based upon these facts and this sequence of events: The automobile collision was in Kansas City. The plaintiff, a resident of Kansas City, filed suit in the Circuit Court of Jackson County on November 21, 1945. The defendants were not served with summons in Jackson County and on November 23, 1945, the plaintiff, by affidavit, sued out a writ of attachment against the defendant, Elfine Dale, and attached her 1942 Buick automobile, on the ground that she was a nonresident of Missouri. The defendant Dale and the defendant George W. Baile were married in Parsons, Kansas, on November 22, 1945, the day before the attachment was filed, and, therefore, it is claimed that she became a citizen and resident of Joplin in Jasper County, Baile's home. Since they became and were residents of Jasper County and were not personally served with summons in Jackson County it is charged that the venue of the action was improper and that the court did not have jurisdiction of their persons in Jackson County. The argument is that the suit was commenced by summons on November 21, 1945, and the defendants not being found in Jackson County, the proper venue was Jasper County and an attachment could not then be sued out so as to confer jurisdiction. Mo. R. S. A., Sec. 1450. The defendants accordingly filed pleas in abatement and motions to dismiss which were overruled on January 14, 1946.

Following the overruling of the motions to dismiss and the pleas in abatement the record recites: "And, thereafter, on Monday, January 14, 1946, the same being the first day of the regular January term of said court ENTRY OF APPEARANCE, which, caption and signatures omitted, is in words and figures as follows:

'ENTRY OF APPEARANCE

Come now the above named defendants and do hereby enter their appearance herein for all purposes.' "

The next entry and recital of the record is: "Whereupon, by consent of plaintiff, by his attorney, in open court, the attachment herein is by the Court dissolved and garnishee is released and discharged."

Subsequently, in their answer and throughout the trial, the defendants contended that the court should have sustained their pleas to the jurisdiction.

Despite the entry of appearance "herein for all purposes" the defendants contend that they properly preserved their right to continue the attack on the jurisdiction of the court for lack of proper venue. It is insisted that an entry of appearance does not constitute a waiver of jurisdiction of the person unless it is filed before the initial challenge or plea to the jurisdiction and with the intention of waiving jurisdiction. Admittedly, defendants may combine a plea in abatement with an answer after a special plea to the jurisdiction has been overruled and not thereby waive jurisdiction of the person. State ex rel. v. Harris, 349 Mo. 190, 159 S. W. (2) 799; Mertens v. McMahon, 334 Mo. 175, 66 S. W. (2) 127; annotations 55 A. L. R. 1121, 129 A. L. R. 1240. It may also be admitted that the mere entry of appearance was not a compliance with Mo. R. S. A., Sec. 1442 and did not in and of itself dissolve the attachment, because the defendants [94] did not file an answer with the entry of appearance. But, the fact that the action was instituted or aided by an attachment does not vary or change the rule that a general appearance by a defendant gives the court jurisdiction to render a personal judgment against him. 7 C. J. S., Sec. 491(b), p. 647. In attachment "When the defendant has been served with the writ, *or appears to the action,* the proceedings in the cause shall be the same as in actions instituted by summons only, . . . " Mo. R. S. A., Sec. 1473. And, "When the defendant is summoned to appear, *or shall appear voluntarily, the like proceedings shall be had between him and the plaintiff as in ordinary actions commenced by summons, and a general judgment may be rendered for or against the defendant."* Mo. R. S. A., Sec. 1477; Bieser v. Woods, 347 Mo. 437, 440-441, 147 S. W. (2) 656, 658; Mo. R. S. A., Sec. 876.

An "appearance," here strictly an "optional appearance" (one to save or secure some right), means the coming into court by either party to the action "but in its common and particular use it signifies an overt act by which a person against whom suit has been commenced submits himself to the jurisdiction of the court, and is his first act therein." 6 C. J. S., Sec. 1, p. 4. The appearance may be express or it may be implied from the defendants "taking, or agreeing to some step or proceeding in the cause beneficial to himself . . . other than one contesting only the jurisdiction, . . . " 6 C. J. S., Sec. 12, p. 17. Thus the mere continuing of a case by agreement after a plea in abatement is an appearance conferring jurisdiction of the person. Columbia Brewery Co. v. Forgey, 140 Mo. App. 605, 120 S. W. 625. Also, taking a change of venue and subsequently agreeing to a continuance is an appearance conferring jurisdiction of the per-

son. Baisley v. Baisley, 113 Mo. 544, 21 S. W. 29. The appearances in these instances were as effective in conferring jurisdiction of the person as the filing of an answer and counterclaim. Robinson v. Field, 342 Mo. 778, 117 S. W. (2) 308; First Nat. Bank of Appleton City v. Griffith, 192 Mo. App. 443, 182 S. W. 805. And in this case the defendants entered "their appearance herein for all purposes" and thereby took a step in the cause which resulted in benefit to them and secured a right to at least one of them. The plain implication of the next entry in the record is that it was made because of the entry of appearance, "whereupon, by consent of plaintiff, by his attorney, . . . the attachment herein is by the Court dissolved . . . " In all the circumstances there was a general entry of appearance and the defendants were no longer in a position to challenge the court's jurisdiction of their persons. Bieser v. Woods, supra; Maurer v. Phillips, 182 Mo. App. 440, 168 S. W. 669; annotation 16 L. R. A. (N. S.) 177, 180.

The plaintiff submitted his case on both primary negligence and negligence under the humanitarian doctrine.

It is first claimed that the primary negligence instruction one, is erroneous because it directs a verdict for the plaintiff and ignores the pleaded defense of contributory negligence, of which there was evidence, that he failed to sound a warning. But in this connection, at the defendants' request, the court gave two instructions which directed a verdict for them if the jury found that the plaintiff was guilty of contributory negligence in driving into the intersection at a speed of twenty miles an hour into the path of the defendants' automobile, in failing to keep a lookout, in operating his car with defective brakes and in failing to slacken his speed. Thereby the subject of contributory negligence was instructed upon and any error in the plaintiff's instruction in ignoring the defense was cured by the defendants' instructions. Davis v. City of Independence, 330 Mo. 201, 49 S. W. (2) 95; Wheeler v. Breeding, (Mo. App.) 109 S. W. (2) 1237, 1243. It is argued, nevertheless, since none of the instructions hypothesized the defense of failure to warn that any error in the plaintiff's instruction ignoring the specific charge was not cured. But the defendants, having assumed to cover the subject by hypothesizing four specific acts of contributory negligence in two instructions, should have included failure to warn if they desired the jury's specific finding on the additional charge. Billingsley v. Kansas City Pub. [95] Ser. Co., (Mo. App.) 191 S. W. (2) 331, 339; Pyle v. McNealy, 227 Mo. App. 1035, 62 S. W. (2) 921.

The hypothesized acts of primary negligence were that the plaintiff's automobile was in or approaching the intersection which the defendant Baile could have seen, had he been exercising the highest degree of care, and that "he was driving at a high, dangerous and

excessive rate of speed under the circumstances," failed to keep a careful lookout ahead, negligently failed to stop the automobile, failed to slacken the speed of the automobile and failed to swerve it so as to prevent the collision. The humanitarian instruction, number two, hypothesized a finding of the plaintiff's peril and that Baile could "have sufficiently slackened the speed . . . and to have changed the course thereof" and thereby have prevented the collision. It is urged that the giving of these instructions constituted prejudicial error in that instruction one was confusing, misleading and by reiteration commingled primary negligence and negligence under the humanitarian doctrine and directed a verdict on both types of negligence. It is urged that the two instructions overlap and commingle both types of negligence and inject and permit the consideration of primary negligence in determining whether there was negligence under the humanitarian doctrine. It is insisted that the two instructions submitted two inconsistent and irreconcilable theories of recovery, excessive speed and ability to slacken speed. Finally it is urged that the instructions are erroneous in that instruction one hypothesizes the highest degree of care while instruction two hypothesizes ordinary care.

Instruction one is rather involved and there was no attempt at simplicity and precision in the submission of the simple issues involved but it is not so repetitious and confusing and does not so commingle acts of primary negligence and acts of humanitarian negligence as to constitute prejudicial error. "But instructions, prejudicially erroneous because confusing and misleading, given by the trial courts in the cases cited were erroneous not only in being (in some instances) verbose, repetitious or argumentative" but in submitting conflicting theories or in commingling primary and humanitarian negligence. State ex rel. Kansas City Pub. Serv. Co. v. Bland, 353 Mo. 1234, 1243-1244, 187 S. W. (2) 211, 215. We have set forth the substance of the circumstances and specifications relied upon and they are in no wise comparable to Freeman v. Berberich, 332 Mo. 831, 60 S. W. (2) 393. In that case a court drafted humanitarian instruction required the defendant to be free from both primary negligence and negligence under the humanitarian doctrine, it plainly commingled both the plaintiff's and the defendants' antecedent or primary negligence with humanitarian negligence and of course was prejudicially erroneous. There, also, the plaintiff offered but a single instruction and that on the measure of damages. Here, at the plaintiff's behest separate instructions hypothesized his two theories. And the fact that the plaintiff's instruction one required the defendants to exercise the highest degree of care while his instruction two required them to exercise ordinary care is not an error of which the defendants may justly complain. Wells v. City of Jefferson, 345

Mo. 239, 245, 132 S. W. (2) 1006, 1009; Null v. Stewart, (Mo.) 78 S. W. (2) 75. Compare: White v. Powell, 346 Mo. 1195, 145 S. W. (2) 375; Woods v. Ogden, (Mo.) 102 S. W. (2) 648, 649.

What we have said with reference to the instruction's commingling primary and humanitarian negligence becomes clearer when we consider the assignment that the instructions submit repugnant, irreconcilable, conflicting theories of recovery. The defendants argue the matter in this fashion: They excerpt from instruction one: "danger of collision . . . was imminent . . . and . . . in time thereafter . . . to have stopped . . . to sufficiently slacken the speed . . . and . . . to have swerved . . .," and from instruction two: "plaintiff became and was in imminent peril and danger of collision . . . ; . . . plaintiff in the aforesaid position of imminent peril and danger . . . and . . . in time thereafter . . . to have slackened the speed . . . and to have changed the course . . ." It is then argued that the instructions thereby inject [96] primary negligence into humanitarian negligence and authorize the jury to return a verdict against the defendants on two irreconcilable, conflicting theories, inability to slow down because of speed and ability to slow down.

In Reiling v. Russell, 348 Mo. 279, 153 S. W. (2) 6 and State ex rel. Fleming v. Bland, 322 Mo. 565, 15 S. W. (2) 798, the court was concerned with the correctness of a single humanitarian instruction which permitted consideration of the defendants' antecedent negligence and, as we have previously indicated, were therefore prejudicially erroneous. In Mayfield v. Kansas City So. Ry. Co., 337 Mo. 79, 85 S. W. (2) 116, the court was particularly concerned with a long, involved humanitarian instruction from which "No jury could ever be expected to 'unscramble' the matters of primary negligence, therein hypothesized, from the acts which would constitute humanitarian negligence." One may not submit inconsistent theories of recovery in either the same or in separate instructions but the rule does not mean that such instructions may not conflict abstractly, theoretically or philosophically. Whether the two theories are irreconciliably repugnant or conflicting depends upon the facts. Hillis v. Home Owners' Loan Corp., 348 Mo. 601, 154 S. W. (2) 761. In the latter case there was evidence from which the jury could find that the collision was caused by excessive speed under the circumstances and there was also evidence from which they could find that it was caused by failure to slacken speed and so the two theories were not inconsistent or self-destructive in a primary negligence submission. What the rule means is illustrated by Elliott v. Richardson, (Mo. App.) 28 S W. (2) 408. There the plaintiff relied upon primary negligence of driving upon a wet, slippery street at such speed that the automobile was out of control and could not be stopped and upon

the humanitarian assignment that the automobile could have been stopped. Obviously these two things, out of control and ability to stop, not only conflict theoretically but in fact and so it was error to submit both of them. In Tunget v. Cook, (Mo. App.) 84 S. W. (2) 970 the plaintiff relied upon and submitted that the defendant did not have control of his automobile and that he did have control of it and could have stopped. The court of appeals held the submission conflicting and erroneous and this court held that there was no conflict in the court of appeals ruling and any decision of this court. State ex rel. Tunget v. Shain, 340 Mo. 434, 101 S. W. (2) 1. The cases are collected and reviewed in Hillis v. Rice, (Mo. App.) 151 S. W. (2) 717 and it is there pointed out that reliance upon speed and ability to slacken speed do not necessarily conflict. "It was not error to submit the case under both theories (stopping a streetcar after a situation of peril arose and excessive speed) if the evidence was sufficient to authorize the submission of both." Williams v. St. Louis Public Serv. Co., 335 Mo. 335, 345, 73 S. W. (2) 199, 202. In that case the court also said: "The fact that the streetcar going at twenty miles per hour, could have been stopped and the collision averted after the motorman discovered deceased in a position of peril, is not inconsistent with the idea that the rate of twenty miles per hour was, under the facts shown, a negligent speed." So it was in Bumgardner v. St. Louis Public Ser. Co., 340 Mo. 521, 102 S. W. (2) 594, where there was proof that speed caused the collision and also proof that the streetcar could have been stopped, there was no irreconcilable inconsistency in submitting both grounds of recovery. It is unnecessary to set forth and analyze the facts in this case and demonstrate that there was evidence in support of both theories because the defendants admit "that the plaintiff made a submissible case for a jury." All the instructions considered, there was no prejudicial error materially affecting the merits of the action. Mo. R. S. A., Secs. 847.123; 847.140(b).

■ The plaintiff sought damages for his personal injuries, loss of earnings and injury to his automobile. The jury awarded him $8,000.00 which the defendants claim is excessive and should be reduced by remittitur. The plaintiff's automobile was damaged about $125.00. He paid one doctor $50.00 and owes another $172.00 for treatments. There was some small additional expense for a brace and medical supplies. The plaintiff [97] is a bricklayer sixty-one years of age. He estimated that he had lost $40.00 to $50.00 a month in wages as a result of his injuries from November 11, 1945 to the date of the trial in May 1947.

The plaintiff went to his physician's office the day after the collision, November 12, 1945. The doctor examined him and found bruises on the back of his head and the lower part of his back. The doctor

saw him sixteen times over a period of three months. He complained of pain in his back and the doctor gave him heat treatments, taped his back and finally prescribed a canvas brace. This doctor was of the opinion that his injuries consisted of "Strain of the muscle of the back, to the head, principally." This doctor did not observe any muscle spasm. He did not see the plaintiff again until a few days before the trial in 1947 when he examined him and was unable to find any basis for the plaintiff's complaints of pain in his back, nervousness and irritability.

About a year after the accident, in September 1946 and on March 5, 1947, the plaintiff was examined by another doctor who found tenderness in the lumbosacral joint and muscle spasms on both sides of the lumbar area. His conclusion was that "this man probably had intraspinal lesion, or pressure on the nerve roots, that is easily due to trauma," and probably a herniated disc which could only be remedied by an operation. In November 1946 the plaintiff went to an osteopathic physician who had given him forty-three treatments up to the time of the trial. This doctor found spasticity of the lumbosacral muscles and a herniated disc which he thought was a permanent injury in the absence of surgery. An operation for a herniated disc was estimated to cost about $375.00. As to treatment, this doctor "started him out on some diathermy treatments, or short wave. I gave him short wave treatments across the lumbosacrum, sacroilliac. I gave him intravenous injections of salihexin, which has a tendency to relieve muscle spasm temporarily, and also gave him a prescription for codeine, barbital for his headache."

Evidence of serious injury is not particularly satisfying (the defendants' doctors found that his only injuries, from which there had been 'a complete recovery, "were some minor soft tissue injuries") but when the items of actual expense and loss, loss of wages, the present-day value of money and the medical evidence are all considered, we cannot say that the verdict is excessive. Rosenberg v. Terminal R. R. Ass'n., (Mo.) 159 S. W. (2) 633; Williamson v. Wabash R. Co., 355 Mo. 248, 256, 196 S. W. (2) 129, 134.

The judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. *Ellison, J.,* and *Tipton, P. J.,* concur; *Leedy, J.,* absent.