250 S.W.2d 958 (1952)
MILLER
v.
BRUNSON CONST. CO.
No. 42831.
Supreme Court of Missouri, Division No. 2.
July 14, 1952.
Motion for Rehearing or to Transfer to Denied September 8, 1952.
*959 John S. Marsalek, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for appellant.
Dearing & Matthes, Will B. Dearing, Hillsboro, for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied September 8, 1952.
BARRETT, Commissioner.
In this action against Brunson Construction Company for negligent personal injury a jury has awarded Roland Miller $30,000. Roland is a mechanic, employed by Sidney Weber, Inc., a distributor of automobiles. In order to more readily drive the larger model automobiles up to its repair department it became necessary to enlarge and change the space above the ramp between the first and second floors, and Sidney Weber engaged the Brunson Construction Company to do the work. Before the remodeling could be done it was first necessary to dismantle the small parts department and wreck the space it occupied adjacent to the repair shop on the second floor above the ramp. The parts department was in three tiers or levels above the ramp and on the first day of the work before noon Brunson's employees had removed the first two sections, including the flooring in the second sectiona space about ten by twenty-five feetincluding one or two joists. Underneath and fastened to the joists was the plasterboard ceiling over the ramp. About 12:30 Roland walked across the joists up to the third tier or section which was about eighteen inches higher than the second section for an automobile part and in returning stepped down from the third tier upon what appeared to him to be solid flooring and fell through the plasterboard ceiling onto the concrete ramp below. As the basis of his recovery the plaintiff hypothesized, as he had pleaded, these facts and circumstances and that the material fastened to the joists "gave the appearance of being solid" and relying upon the appearance he was caused to fall and that the defendant knew that employees of Sidney Weber would be required to use the parts department, knew the condition of the ceiling and its deceptive appearance but "failed to construct, build and maintain a barricade * * * and * * * failed to provide, construct and maintain a gangplank or other temporary device which would have enabled employees of Sidney Weber, Inc., including plaintiff herein, to have walked across that space where the floor had been removed."
The appellant, Brunson Construction Company, contends that the trial court erred in failing to direct a verdict in its favor for the reasons, first, that the evidence failed to show any negligence on its part, and, second, that the plaintiff was guilty of contributory negligence as a matter of law. It is also urged, concerning its liability, that the trial court erred in instructing the jury, and in the admission and rejection of testimony, and that the verdict is excessive. As to the first point it is said that it was inherent in the work itself and obvious that a dangerous condition would exist while the defendant was engaged in the wrecking phase of the work ordered by Roland's employer. It is said that neither the plaintiff nor his employer had given any notice that employees of Sidney Weber would enter that part of the premises under repair and under the circumstances the defendant was *960 under no duty to anticipate the plaintiff's presence there, or to anticipate that anyone would attempt the extraordinary course of using the ceiling between the uncovered joists as a place to walk upon. It is in this connection that the appellant seeks to invoke and apply the rule that where an injury or occurrence cannot reasonably be anticipated and would not have happened unless under exceptional circumstances, it is not negligence to fail to take precautionary measures to avoid it. American Brewing Ass'n v. Talbot, 141 Mo. 674, 42 S.W. 679; Mann v. Pulliam, 344 Mo. 543, 127 S.W2d 426. It is urged that Roland voluntarily entered the space in which the wrecking was in process and therefore his injury was due to a risk inherent in the work and the premises and therefore he is not entitled to recover. It is argued that the situation itself suggested investigation and inspection and that Roland voluntarily chose a way attended by danger when a safe way was open to him and for that reason he was guilty of such contributory negligence as to preclude his right to a recovery.
There is no dispute here concerning the general rules upon which the appellant relies; the appellant is not liable for an injury that could not reasonably be anticipated or guarded against by the exercise of ordinary care. McHugh v. National Lead Co., D.C., 60 F.Supp. 17, 20. The appellant, however, is a contractor and as such was in charge of and had control of the stipulated work and therefore is responsible for any wrongful or negligent acts committed by it or its employees while the work is in progress. In this connection the contractor is ordinarily liable "for injuries occasioned to a servant of the principal employer by negligence on the part of a contractor which produces abnormally dangerous conditions upon premises which remain in the possession of the principal employer while the stipulated work is in progess, * * *." Annotations 38 A.L.R. 403, 455; 20 A.L.R.2d 868. This general rule has been recognized and applied to employees of another contractor. Smith v. St. Joseph Ry., Light, Heat & Power Co., 310 Mo. 469, 276 S.W. 607, 609; Kiehling v. Humes-Deal Co., Mo.App., 16 S.W.2d 637. There is a duty upon the contractor to not unnecessarily imperil the employees of another contractor or of the principal employer. Loehring v. Westlake Const. Co., 118 Mo.App. 163, 94 S.W. 747. While the appellant was not bound to anticipate a condition or an occurrence that a reasonably prudent person could not foresee or guard against, "the fact that the precise manner in which the injury occurred was not foreseeable would not be a defense, if from its failure to warn * * * the defendant might reasonably have anticipated that injury of some kind would result." McHugh v. National Lead Co., supra.
The appellant's argument tacitly concedes the dangerous condition of the premises as "inherent in the work itself." Roland, in describing the occurrence, said that he had a "back-up light" in his right hand, that he took hold of a stock bin on the third tier with his left hand and "stepped down to what looked solid; it looked like cement under those joists * * * it was a grayish color, just like the old floor they used to have in there" and when he let his weight down on his right foot he immediately fell through the ceiling onto the concrete ramp below. One of the appellant's employees said that the plasterboard ceiling had once been white but was then a "grayish color." The carpenter foreman said that it was "off-white" or "dirty white." While it was, of course, obvious to anyone that repairs were in progress and that there was some hazard in using that part of the premises the temporary condition brought about by the work, particularly with respect to the ceiling or floor, was not obvious but deceptive in appearance. Northern Trust Co. v. Elman, 72 F.2d 169. Neither Sidney Weber nor the plaintiff told Brunson's employees that they would use the small parts department while the work was in progress, but Brunson's carpenter foreman said, "I just took it for granted myself they would have to have ayou would have to get into there sooner or later, so I had made preparations to put a ramp across there." He said, "there was only space for one man to go in there to get parts and, as soon as the joists had been removed, he intended to build a catwalk. There had been no request *961 by Sidney Weber's employees for either a barricade or a catwalk but it may not be said that Brunson Construction Company did not know that Sidney Weber's employees would enter the parts department, and, even if its employees did not actually know it, under the circumstances they should have reasonably anticipated the use. The important thing is that Roland was rightfully in the parts department, the appellant had control of the work in progress in that section of the building, it was hazardous and deceptive in appearance and there was no warning by the appellant and there was no barricade or catwalk and in all the circumstances the appellant's negligence and consequent liability was for the jury. Loehring v. Westlake Const. Co., supra; Kiehling v. Humes-Deal Co., supra; Sinberg v. Falk Co., 98 Mo.App. 546, 72 S.W. 947; annotation 38 A.L.R. 403.
It necessarily follows that instruction one was not prejudicially erroneous in permitting a finding of negligence against the defendant and of ordinary care on the plaintiff's part as there was evidence in support of the hypothesis of the instrucion in these respects. Also, as indicated, it was a fair inference from the evidence that the appellant "by the exercise of ordinary care could have known that employees of Sidney Weber, Inc., including plaintiff herein, would be required to go to the one remaining section of the parts department" and it was not error to submit the question to the jury, even if it could be said that the instruction submits "actual knowledge." Likewise the instruction in hypothesizing failure to erect a barricade (for the purpose of warning or of keeping people out) and failure to construct a gangplank or catwalk (for the purpose of safe use) does not submit repugnant or irreconcilable facts or theories as a basis of recovery and is not erroneous for that reason. Mahan v. Baile, 358 Mo. 625, 632-634, 216 S.W.2d 92, 95. Compare Elliott v. Richardson, Mo.App., 28 S.W.2d 408.
Sidney Weber maintained another and larger parts department in another building across the street and, possibly, Roland could have secured a back-up light by going over to that building rather than by walking across that part of the building under repair, but the fact that he could have done so is not sufficient in the circumstances of this case to invoke the rule that "where * * * two ways are open, one safe and the other unsafe, and the danger in the latter is known to the traveler, to choose the unsafe way is such a want of ordinary care as will defeat a recovery." Craine v. Metropolitan Street Ry. Co., 246 Mo. 393, 406, 152 S.W. 24, 28. The conditions were such as to suggest investigation and inspection, Boland v. Thompson, Mo. App., 142 S.W.2d 790, and Roland says that he was using his faculties but nevertheless was deceived by appearances, and it may not be said as a matter of law that the danger was so obvious that he should have discovered it. In the circumstances his contributory negligence was for the jury as the court hypothesized in the instructions given at the request of the appellant. Geninazza v. R. U. Leonori Auction & Storage Co., MO.Sup., 252 S.W. 417; Becker v. Aschen, 344 Mo. 1107, 131 S.W.2d 533.
Ben Spurgeon was the appellant's labor foreman and he testified that Roland did not look and cautiously step down from the third tier but that he heedlessly "jumped out of that hole there." Upon cross-examination he was asked and permitted to affirmatively answer this question: "Isn't it a fact that that board under the joists had the appearance of being substantial and safe to step on to one who was not familiar with construction work?" It is urged that this question called for a conclusion, an opinion not on the part of the witness but of others based upon mere appearance and invaded the province of the jury, Landers v. Quincy, O. & K. C. R. Co., 134 Mo.App. 80, 114 S.W. 543, and being erroneously admitted was presumptively harmful and prejudicial. State ex rel. Berberich v. Haid, 333 Mo. 1224, 64 S.W.2d 667. This same witness, on direct examination had described the plasterboard in this language: "Well, it was a gray color; it had been white in its time, but it had a little dust on it that caused it to be." Other of the appellant's witnesses said that the plasterboard was an "off-white," "dirty white" or *962 was once white but was now a "grayish" color. The plaintiff, in describing the place said, without objection, "I stepped down to what looked solid; it looked like cement under those joists. * * * It was a grayish color, just like the old floor they used to have in there, and it was just at the same level as the old floor. * * * Q. Looking at the floor, and it looked solid, so you stepped down on the floor? A. Yes." On cross-examination the testimony was, "Q. As you looked at it, you had no way of telling whether it was concrete, or lath or anything else? A. No, sir." So, while the question propounded to Spurgeon called for a conclusion and a general opinion based on appearance, even to others, we cannot say that it was so prejudicially erroneous as to compel a new trial. As we have indicated, the appellant's whole argument tacitly concedes the hazardous condition of the premises, and while other witnesses had not given identical evidence without objection they had testified to substantially similar facts and it was a fair inference from all the testimony, aside from Spurgeon's evidence, that the plasterboard had the appearance of being substantial and safe. Sullivan v. Union Electric L. & P. Co., 331 Mo. 1065, 1082, 56 S.W.2d 97, 104.
While one of the appellant's witnesses, a laborer, was testifying he was asked this question, "You heard Mr. Teeney (a Sidney Weber employee) give some instructions to these men there; will you state what instructions Mr. Teeney gave them about going into that parts department while you were engaged in this job of wrecking?" Upon objection that it was hearsay and there was no showing that Roland heard the instructions the court excluded the answer. Appellant's counsel then offered to show by this witness that Mr. Teeney "gave definite instructions to a group of mechanics whom he gathered there that they were not to go into that parts department while the wrecking was in progress, and that fact that he gave that instruction was heard by and known to the various employees of the defendant Brunson Construction Company on the job * * *." It was, as the appellant argues, an important issue whether appellant had reason to expect Sidney Weber's employees in the parts department and, while the evidence may have had no bearing on Roland's contributory negligence, it is urged that it was important as bearing upon the appellant's negligence and duty with respect to building a barricade or catwalk and that the trial court erred in excluding the proffered evidence. It is urged that the evidence was admissible as an "independently relevant fact." "Where, regardless of the truth or the falsity of a statement, the fact that it has been made is relevant, the hearsay rule does not apply, but the statement may be shown. Evidence as to the making of such statement is not secondary but primary, for the statement itself may constitute a fact in issue, or be circumstantially relevant as to the existence of such a fact." 31 C.J.S., Evidence, § 239, p. 988; 11 Wigmore, Evidence, § 1789. An example of the appropriate application of the rule is Scott v. Missouri Insurance Co., Mo.Sup., 233 S.W.2d 660, in which reports to the insurance company by Retail Credit Corporation were held admissible upon the company's reasonable good faith in defending a policy upon the ground of misrepresentation as to good health. See also: German Evangelical Bethel Church v. Reith, 327 Mo. 1098, 39 S.W.2d 1057, 76 A.L.R. 604. As we have previously pointed out, despite any instructions by Sidney Weber to its employees, the appellant's carpenter foreman said,
"I just took it for granted myself they would have to have ayou would have to get into there sooner or later, so I had made preparations to put a ramp across there. * * * Well, from what I said, I don't remember anybody telling me, but from what I understood there was only space for one man to go in there to get parts.
"Q. Whether there was one man or a dozen men, you were going to build the catwalk so he could walk on it? A. Sooner or later they would need parts.
"Q. And you knew there would be an employee of the garage going back there, didn't you, that is why you needed that catwalk there so he could walk in safety, isn't that true? A. That is right."
*963 As to Roland the instructions were hearsay and there was no offer to show that he had knowledge of them. 1 Jones, Evidence In Civil Cases, § 300, p. 565. From what we have said upon the essential merits as to the appellant's duty and corresponding liability the plaintiff's evidence made a submissible case even though some employee of Sidney Weber's may have told some of the mechanics to not use the parts department while it was being wrecked. In the circumstances, even if it be assumed that the evidence was admissible as an independently relevant statement, it may not be said that the exclusion of the offered evidence was so prejudicial as to demand the granting of a new trial. Section 512.160(2), RS Mo 1949, V.A.M.S.; Walker v. St. Louis Public Service Co., Mo.Sup., 243 S.W.2d 92, 99.
In Philibert v. Benjamin Ansehl Co., 342 Mo. 1239, 119 S.W.2d 797, the plaintiff, aged fifty-two years, suffered numerous cuts and bruises, had a partial paralysis and loss of sensation in both legs, three broken ribs and seven fractures of the spine, the second lumbar vertebra being "jammed and buckled," with separation of the second and fifth vertebrae, nevertheless this court in 1938 reduced his $19,833 verdict to $16,000. In Hillis v. Home Owners' Loan Corp., 1941, 348 Mo. 601, 154 S.W.2d 761 the plaintiff sustained fractures of the first and second lumbar vertebrae and this court reduced his $25,000 judgment to $18,000. Therefore, it is urged that Roland's verdict for $30,000 is excessive. Roland is an automobile mechanic and at the time of the trial was thirty-four years of age. He was earning $60 a week when he was injured and since returning to work has been paid $62.50 a week. However, the evidence is uncontradicted that he is seriously and permanently injured and will not be able to do heavy work such as "pulling" motors. Since he has returned to his employment he has done light mechanical work, tuning motors, repairing lights, radiators and carburetors. When he was first injured on April 4th his stomach was distended and it was about a week before he could be placed in a cast. He was in a cast from April 10th or 11th until June 21st at which time he was given a brace which he wore continuously from August 1950 until February 1951. The doctor stated that he will always have some discomfort and will never be able to do heavy work. His right wrist was fractured and that has healed with good result although he said that it got tired and he had some pain in it. Roland landed on his back on the concrete ramp, a fall of twelve to fifteen feet, and his serious injuries were fractures of the first and third lumbar vertebrae and the eleventh dorsal vertebra. The fracture of the third lumbar vertebra was comminuted, broken into fragments and compressed. There has been some improvement in the third lumbar vertebra but it is depressed in depth about fifty per cent and the condition is permanent. The other vertebrae have healed rather satisfactorily, the doctor estimated their permanent loss of dimension as about twenty per cent and the third lumbar as about one third. There is a loss of sensation in Roland's left leg and foot which another doctor attributed to the severe fracture of the third lumbar vertebra and injury to the intervertebral space.
In contrast with the Philibert and Hillis cases, this court in Abernathy v. St. Louis-S. F. Ry. Co., Mo.Sup., 237 S.W.2d 161, in 1951, reduced a trial court judgment from $45,000 to $35,000. There a fireman, aged thirty-nine years, earning $3,688.07 sustained a compression fracture of the twelfth dorsal vertebra. In Whitaker v. Pitcairn, 351 Mo. 848, 174 S.W.2d 163 the plaintiff's really serious injury was a fracture of the second lumbar vertebra and the court, after emphasizing the plaintiff's loss of earnings, a feature not now so apparent in this case, affirmed a judgment for $23,333.33. In West v. Kurn, Mo.Sup., 148 S.W.2d 752, 756, the plaintiff had a fractured jaw, two or more fractured ribs and "a comminuted or splintered compression fracture of two or more vertebrae of the spine at the twelfth dorsal level" and this court, in 1941, reduced a $45,000 verdict to $35,000. Upon this record, and in view of all the cases, the appellant does not demonstrate that the $30,000 verdict is so excessive as to require a remittitur. Accordingly the judgment is affirmed.
*964 WESTHUES and BOHLING, C.C., concur.
PER CURIAM.
The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.
All concur, except TIPTON, J., who concurs in result.