Ramona CLARK, Appellant-Respondent,

v.

William SIMMONS and Zuzich Truck
Lines, Inc., Appellants,

and

White Motor Company, a Corporation,
Respondent.

No. 48408.

Supreme Court of Missouri,

Division No. 1.

Nov. 13, 1961.

Goldman & Goldman, St. Joseph, for appellant-respondent, Ramona Clark.

James H. Ottman, M. Randall Vanet, Kansas City, for appellant William Simmons.

Price Shoemaker, Elmer E. Reital, St. Joseph, for appellant Zuzich Truck Lines, Inc.

Sebree, Shook, Hardy & Ottman, Kansas City, and Shoemaker & Reital, of counsel, for appellants.

W. J. Sherwood, W. H. Utz, Jr., of Smith, Sherwood, Utz & Litvak, St. Joseph, for defendant-respondent, White Motor Co.

HYDE, Judge.

Action for damages for personal injuries sustained in a collision in which the Chevrolet car in which plaintiff was riding was struck by a tractor driven by defendant William Simmons while acting as the employee of defendant Zuzich Truck Lines (hereinafter called Zuzich). Defendant White Motor Company (hereinafter called White) was the manufacturer of the tractor involved. Plaintiff had a verdict for $25,000 against Simmons and Zuzich and White had a verdict in its favor. Defendants Simmons and Zuzich have appealed from the judgment entered on the verdict against them. Plaintiff has appealed from the judgment entered on the verdict for White.

Plaintiff's evidence showed she was riding in the car, driven by her husband, north on U. S. Highway 71 in clear, dry weather. Simmons, who had been ordered to leave his trailer in St. Joseph and bring his tractor to Kansas City, was driving south. The pavement was 20 feet wide and crossed a creek at the bottom of two hills. As plaintiff's car came down the south hill, Simmons' tractor was seen coming down the north hill around a curve about 500

feet away. According to plaintiff's evidence the tractor's speed was about 65 miles per hour (Simmons said about 50) and plaintiff's husband was driving about 50 to 55 when he first saw the tractor. Plaintiff's car was slowed to 10 or 15 miles per hour before the collision, which occurred on the lower part of the south hill, and it was estimated that the tractor had at that time traveled 300 feet of the 500 feet between the two cars when it came into view. Plaintiff's evidence was that, soon after she and her husband saw the tractor, it went to the west side of the road and hit the shoulder, then came back east across the middle dividing line of the pavement, then went back west and hit the shoulder again and thereafter came back east across the middle line and struck the left side of plaintiff's car when it was partly on the east shoulder. Plaintiff's car was knocked off the highway and landed upside down in the creek. Simmons was thrown out on to the shoulder near the point of collision and his tractor went off the highway 168 feet farther south striking and lodging against some large trees.

There was a lip or gutter at the edge of the pavement where according to plaintiff the tractor hit the shoulder the second time and went a foot or more off the pavement with the right front wheel. Defendant's testimony about this was: "I allowed the tractor to come close to the right or west edge of the road, be in my lane. And at that time I might have let it get partially, as I say split the wheels on the edge of the road. Out to the edge of the highway, the lip or edge of the road, it fought me a little bit, see; it came back to the left. I didn't particularly worry about it; the car was quite a ways from me. But as I came to the bottom of the hill, the car got closer and I took back to the right again. And as it came back in contact with this wash or lip or gutter, it seemed to pull to the right. * * * I tried to pull it back to the left at that time, probably a little bit. Still I didn't notice anything wrong until all at once it just jumped to the left. At that time naturally I tried to pull it back to the right and that's when I noticed the steering wheel had no resistance, went slack." It was also shown that Simmons smoked constantly and took one hand off the steering wheel to flip a cigarette out of the window just before his right wheels first went on the shoulder. Other facts will be stated in connection with our rulings.

Instruction 1 authorized a verdict against Simmons and Zuzich (uncontroverted facts hypothesized omitted) on the following findings: "[I]f you further find that said Chevrolet automobile was on the right or east half of the Highway, if so, and if you further find that at said time and place on the occasion mentioned in evidence William Simmons was operating the White tractor southwardly on said Highway #71 toward the approaching Chevrolet automobile, and you further find that William Simmons operated said tractor so that a wheel of the tractor struck the lip on the edge of the west side of the pavement, if so, and you further find that said tractor then swerved or angled over on to the east side of the pavement and collided with the Clark automobile, if so, and you further find that said William Simmons failed to operate the White tractor on the right half of the roadway and operated same on the east side of the roadway, if so, and you further find that William Simmons in said respect thereby failed to exercise the highest degree of care in the operation of said tractor, and that in so doing he was negligent, and you further find that such negligence, if any, directly caused the collision mentioned in evidence with the Clark automobile * * *."

Simmons and Zuzich make three contentions, as points relied on, as follows: (1) that Instructions 1 and 2 are in irreconcilable conflict and are mutually repugnant, the proof of one disproving the other; (2) that Instruction 1 assumed negligence as a matter of law, failed to hypothesize sufficient facts to support a finding of negligence; and directed a verdict as a matter of law; (3) that plaintiff's evidence does

not support the charge of negligence submitted.

Taking these contentions in inverse order, these defendants say the only negligence submitted against them by Instruction 1 is: "[A]nd if you further find that said William Simmons failed to operate the White tractor on the right half of the roadway and operated same on the east side of the roadway." They say plaintiff proved only that the tractor came on to the east side of the pavement and that the steering wheel went slack; and that plaintiff brought this out by calling Simmons as a witness in presenting her case, citing Reece v. Reed, Mo.Sup., 326 S.W.2d 67, 72. However, in that case, the plaintiff showed by questions and answers from a deposition of the defendant that defendant had "blacked out" before running into his car from the rear. We held that "plaintiff, having presented the positive testimony and statement of defendant that she blacked out, may not successfully contend that such evidence was contradicted or destroyed by other testimony from the same witness as to facts which might warrant vague inferences to the contrary." Nevertheless we recognized that "a party is not bound by the unfavorable testimony of one * * * witness[es] if such testimony is contradicted."

In this case, plaintiff's counsel was attempting to examine Simmons as an adverse party under the rules applicable to the cross-examination of witnesses (Section 491.030 RSMo 1959, V.A.M.S.) to support his alternative theory (which as hereinafter indicated we find was not supported by substantial evidence) that the striking of the lip or gutter by the tractor due to Simmons' negligence broke the ball stud loose from the relay lever of the tractor's steering apparatus; and that this was the cause of the steering wheel to going slack, if it did. "When the plaintiff calls a defendant as his witness he is entitled to cross-examine him, Section 491.030, and plaintiff is not bound by his testimony unless it is the only testimony in the case on that point. Richeson v. Roebber, 349 Mo. 132, 159 S.W.

2d 658, 141 A.L.R. 1. He has the right to introduce evidence contradicting that given by the defendant." (Frank v. Wabash R. R. Co., Mo.Sup., 295 S.W.2d 16, 22; Lay v. McGrane, Mo.Sup., 331 S.W.2d 592, 596.) We find plaintiff did have contradicting evidence. In the first place, the maneuvering operation of the tractor (shown by plaintiff's evidence and partly corroborated by Simmons) requiring many definite turning movements of the steering wheel was substantial proof that the steering wheel was not slack before the collision. Each change in the direction of the tractor required an effective related turning of the steering wheel, or at least the jury could have so found from plaintiff's evidence. Simmons' testimony shows the tractor responded to his movements of the wheel at least until he got on the pavement the second time; and plaintiff's evidence also showed that, after Simmons traveled with his right wheels on the shoulder for some distance, he got the tractor back on the pavement before coming across to the east side of the highway. The jury could reasonably believe from the physical facts shown that pulling the tractor suddenly back over the lip could cause it to jump to the left as Simmons said it did. Moreover, Simmons said he never did claim there was anything wrong with the steering mechanism and that it was not his idea; but he also said he did tell his lawyers about the wheel going slack. These inconsistencies were never explained. Furthermore, it was shown that, after the collision, the tractor struck a large tree with great force and that its left front wheel was bowed out to the left as far as it could go. (This was the wheel to which the broken part of the steering mechanism was attached.) Simmons said he purposely did not apply the brakes, although he had time to do so, because he thought it would throw the tractor out of control and because he thought he would miss the automobile. However, plaintiff's husband, who was able to get out of his car and call an ambulance, found skid marks crossing the east side of the pavement and continuing

on the shoulder. (Pictures of these skid marks were in evidence.) This was some evidence that application of the brakes affected Simmons' control of the tractor.

■ Plaintiff's alternative theory of concurring negligence which was not submitted by any instruction was that the break in the steering mechanism (actually the ball stud was pulled out of its socket in the relay lever arm) occurred when the tractor struck or went over the lip or gutter and that this was partly due to the negligence of Simmons in striking the lip and partly to the negligence of White in its improper design and manufacture. However, we find there was no substantial evidence to support this theory because there was no substantial evidence that the ball stud was broken loose at that time. Plaintiff had an expert witness, a consulting metallurgist, who was asked if the break found after the collision "could have occurred on the wheel of the truck in question striking either a bump or hole in the road, a culvert or a tree." His answer was: "Such an event would cause force transmission against the wheel and against the axle, then through the assembly, so that any sort of force transmitted in that way could cause the fracture, so that the answer is yes." However, he also said he did not know how much force would be required to pull the ball stud out of the hole in the relay lever arm; that it would require a test to determine it; and that he could not answer whether even striking a tree would cause it. Thus plaintiff's expert did not even mention striking the lip (which incidentally was struck by the right wheel and not the left) and at most his testimony could amount to nothing more than an assurance of possibility which was not enough to make a submissible case on this issue. (Kimmie v. Terminal R. R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561, 565; Hunt v. Armour & Co., 345 Mo. 677, 136 S.W.2d 312, 316, and cases cited.)

■■ Considering these facts, we conclude that plaintiff did have evidence to support the submission that Simmons "operated" the tractor so that a wheel struck the lip on the west side of the pavement, then failed to operate it on the right half of the roadway and "operated same on the east side of the roadway" and "in said respect failed to exercise the highest degree of care" in its operation. Therefore, this third contention of these defendants cannot be sustained. This ruling really also disposes of the second contention of these defendants, which is that the facts submitted by Instruction 1 did not support a finding of negligence and assumed negligence. The issue was simple, namely whether Simmons negligently operated the tractor so that it struck the lip on the west side and then instead of keeping it on the west half of the roadway negligently operated it on to the east side or whether it went to the east side because of a sudden failure of the steering mechanism. Under these circumstances our view is that the jury would understand what the term "operated" meant. Apparently these defendants also thought so since we note Instruction 10 given at the request of Simmons and Zuzich told the jury that plaintiff was not entitled to a verdict against them if they found that at the time and place of the collision "William Simmons was not negligent in failing to operate the White Tractor on the right half of the roadway and in operating same on the east side of the roadway." These defendants now criticise Instruction 1 for failing to require findings that the ball stud did not break and that Simmons had the ability, with the appliances at hand, to avoid crossing on to the east side of the roadway. These were defensive matters which these defendants might have had submitted on their request but it was not necessary for Instruction 1 to include such details of negative submission. Therefore, if these defendants deemed this situation "not to have been clearly or sufficiently hypothesized" they should have offered "a clarifying or amplifying instruction." Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 501. Instead of doing so they request-

ed Instruction 10 using the same language concerning the facts submitted. (See Massey v. Berlo Vending Co., Mo.Sup., 329 S.W.2d 772, 777.) Moreover, Instructions 18 and 19, given at the request of White, did submit the issue of whether or not the ball stud was broken prior to the collision. While Instruction 1 cannot be recommended as a model of clarity, we hold it was sufficient and not erroneous under the circumstances of this case.

■ This brings us to the first contention of Simmons and Zuzich that Instructions 1 and 2 are in irreconcilable conflict. The cases they cite are cases of inconsistent submissions on primary and humanitarian negligence, such as Elliott v. Richardson, Mo.App., 28 S.W.2d 408, 410, a slippery street case, where "the court tells the jury in one breath that they may bring in a verdict for plaintiff if they find that defendant's automobile could not have been stopped, [because of its speed] and in the next breath that they may return a verdict for her if they find that the opposite was true." Another case they cite is Tunget v. Cook, Mo.App., 84 S.W.2d 970, where it was submitted as primary negligence that the defendant drove at excessive speed so that he did not have control of his car and as humanitarian negligence that he did have control and could have stopped after the peril arose. We approved this ruling in State ex rel. Tunget v. Shain, 340 Mo. 434, 101 S.W.2d 1. Another case cited is Fisher v. Ozark Milk Service, 356 Mo. 95, 201 S.W. 2d 305, 309, in which we said of the instructions: "One necessarily submitted failure to stop when the driver *could stop,* as the proximate cause of injury, while the other submitted failure to stop when the driver *could not stop* because of bad brakes." Mahan v. Baile, 358 Mo. 625, 216 S.W.2d 92, also cited by these defendants reviewed all these cases and held that under the evidence in that case, the submissions of excessive speed and failure to slacken speed and swerve after the peril arose were not irreconcilably repugnant. Clearly these cases are not in point here. Instruction 1

authorized a verdict only against Simmons and Zuzich on the findings hereinabove noted. Instruction 2 authorized a verdict only against White on findings that the ball stud broke loose from the relay lever of the steering mechanism prior to the collision as a result of negligent design or manufacture. Thus in this case the jury was authorized to find against defendants Simmons and Zuzich on a theory applicable only to them or to find against White on a theory applicable only to it and was not authorized to find against all defendants by either of these instructions. Thus there were no inconsistent theories made applicable to any of the defendants by these two instructions as was done by the primary and humanitarian submissions in the cases cited. Actually these defendants have recognized this by each saying in a separate motion for new trial, in complaining of Instruction 4 given at plaintiff's request, that "said instructions 1 and 2 are mutually exclusive." We fully agree that they were exclusive and thus not repugnant.

■ Instruction 4 was improper and no doubt would have been prejudicial error against all defendants if the jury had found against all defendants. (It authorized a verdict against all defendants without requiring any findings of facts on which such a verdict would be proper and as we have noted there was no substantial evidence to support such a verdict.) However, defendants Simmons and Zuzich do not mention Instruction 4 in their "Points Relied On" (see Rule 83.05, V.A.M.R.) and in the argument in their brief concerning their claim of error in giving Instructions 1 and 2, it is only said: "There was no instruction submitted whereby the jury could have found concurrent liability. It is submitted that Instruction No. 4 further confused the already irreconcilable conflict generated by Instructions Nos. 1 and 2." Nevertheless, it is apparent that the jury was not confused by it because they did not find against all defendants but apparently concluded as Simmons and Zuzich did in their motions for new trial that Instructions 1 and 2 were

mutually exclusive and so applied them by finding against Simmons and Zuzich only, as authorized by Instruction 1, and for White on the facts submitted by Instruction 2. Therefore, we hold that plaintiff's judgment against Simmons and Zuzich should be affirmed.

It is also our view that the judgment in favor of White should be affirmed. Plaintiff claims error in giving Instructions 14, 15 and 17 at White's request and in sustaining an objection to a question asked Simmons when he was being examined by plaintiff's counsel under the rules of cross-examination. The latter matter was not mentioned in plaintiff's motion for new trial and, therefore, is not preserved for review. Anyhow we note that Simmons did give his answer to that question, in answering a subsequent question. Instruction 14 was a cautionary instruction telling the jury to be governed solely by the law and the evidence and not to be influenced by sympathy or prejudice. It was within the sound discretion of the court to give such a cautionary instruction (Baccalo v. Nicolosi, Mo. Sup., 332 S.W.2d 854, 859, and cases cited). Instruction 15 was a burden of proof instruction excluding surmise, guesswork and speculation similar to those approved in West v. St. Louis Public Service Co., Mo. Sup., 236 S.W.2d 308, 312, and Stephens v. St. Louis Public Service Co., Mo.Sup., 276 S.W.2d 138, 144. We consider it appropriate herein where plaintiff's evidence made such a weak case, if any, against White. Instruction 17 was a falsus in uno, falsus in omnibus instruction but which only told the jury to consider the fact of intentional false swearing, if they found any witness had done so, in determining the credibility of the rest of the testimony of that witness. Plaintiff says "the mere fact that witnesses testify in contradiction of each other does not warrant the giving of the instruction if the circumstances are such that mistakes may exist consistently with good faith." However, the giving of such an instruction is largely within the discretion of the trial court. (Rossomanno v. Laclede Cab Co.,

Mo.Sup., 328 S.W.2d 677, 680, and cases cited.) There were such conflicts, inconsistencies and discrepancies in the testimony of both the lay and expert witnesses herein that we conclude there was no abuse of discretion in giving this instruction.

Therefore the judgment is affirmed as to all parties.

All concur.