**STATE of Missouri ex rel. C. L. DENNIS et al., Relators,**

v.

**Honorable Leroy SNODGRASS, Judge of the Circuit Court of Moniteau County, Missouri, and Honorable H. J. Hood, Magistrate Judge of Moniteau County, Missouri, Respondents.**

No. 25937.

Missouri Court of Appeals, Kansas City District.

Nov. 5, 1973.

**554**

Husch, Eppenberger, Donohue, Elson & Cornfeld, Carroll J. Donohue, Kent W. Faerber, St. Louis, for relators; William J. Donlon, Gen. Counsel, BRAC, Rosemont, Ill., of counsel.

Clarence W. Hawk, California, for respondents.

Before DIXON, C. J., and SHANGLER, PRITCHARD, SWOFFORD and WASSERSTROM, JJ.

## ORIGINAL PROCEEDING IN PROHIBITION

Dixon, Chief Judge.

We consider the propriety of making absolute our preliminary writ of prohibition addressed to respondents as Magistrate and Circuit Judge of Moniteau County.

The parties have briefed and argued many complex questions against a complicated factual background. Dispositive of all issues, since its resolution requires that the writ be made absolute, is the determination that venue does not exist in Moniteau County.

From the pleadings in this prohibition action, the petition and "answer" accepted by us as a return, the voluminous exhibits, and what the parties mutually agree upon and term in the briefs "background facts," we draw the facts necessary for understanding of the issue presented and ruled.

Two suits were initially involved. One was dismissed after issuance of the preliminary writ, which specifically excepted from its restraint such dismissal.

For understanding of the remaining litigation, certain of the "background facts" require statement. The Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees [BRAC] is an unincorporated association of railroad employees certified under the Railway Labor Act as their bargaining agent. Such employees are largely clerks and telegraphers, BRAC having been principally formed by a merger of the Brotherhood of Railway Clerks and the Order of Railroad Telegraphers. Prior to the merger, the clerks had maintained subsidiary units known as System Divisions, and the telegraphers had such units known as System Boards. We take it inferentially that these "system units" were organized from the employees of the craft employed by some portion of a railroad system. Thus, "System Division 25" was one of four such entities which were created to deal with the general employer, Missouri Pacific Railroad. The Missouri Pacific had been organized into four corporate divisions or subsidiaries, the Southern, Western and Gulf Districts and The Texas and Pacific Railroad. Because of a corporate reorganization of the Missouri Pacific, the four entities of BRAC were all dealing with a designated officer of the railroad in St. Louis, rather than with the corporate divisions or subsidiaries of the railroad.

In February, 1971, BRAC, after protracted negotiations, entered into a labor contract, national in scope, with the railroads employing BRAC members, including the Missouri Pacific Railroad. Among the

matters negotiated were jurisdictional disputes between clerks and telegraphers, which had traditionally been a troublesome issue. In exchange for machinery resolving these disputes, apparently to be in large measure a merger of the seniority lists of clerks and telegraphers, a pay increase was granted upon accomplishment of such merger.

Consequent to this negotiation, the Missouri Pacific notified the BRAC that it was implementing the agreement and requested that the seniority lists be merged. The contract provided that three elections were available to BRAC for such merger and that the selection and implementation of this option be within certain time limits. The four affected system boards and system divisions could not reach agreement as to the option to be selected within the time limit and its extensions. The international president then acted, selected an option and also ordered the merger of the system boards and system divisions into one unit, "System Board 72." This was accomplished September 1, 1971, and the assets of System Division 25 were either liquidated or transferred to System Board 72. No proceedings to challenge these actions were taken within the union, and no action of the general committee of former System Division 25 is relied upon to authorize the litigation.

The litigation we are now concerned with was then commenced. Plaintiffs in that suit are eight individuals and "the General Committee of Transportation Division Number 25 Brotherhood of Railway, Airline and Steamship Clerks." The defendants are five individuals, Dennis and Lowry, officers of BRAC; and Upson and Rodman, former officers of System Division 25; and Hawthorne, General Chairman of System Board 72. Also named as defendant is BRAC. The entity described as "the General Committee of Transportation Division 25" consisted of its officers, two in number, and twenty District Chairmen, eight of whom were the named plaintiffs.

The pleading purports to be in the nature of a class action. Much has been argued as to the validity of that pleading, but in the view we have taken of the determinative issue, that need not be decided. We likewise do not rule on the issue of capacity to sue or be sued strongly urged by relators.

The suit was for injunctive relief. It alleged misconduct of the named defendants who it is alleged "unlawfully, fraudulently and maliciously" conspired to effect consolidation by the subordinate units of BRAC and by improperly and without authority selecting the option by which the seniority list would be merged. It alleges also that the transfer of assets of System Division 25 to System Board 72 and the possession and control by defendants of the books, property, money, effects, and "domination" of the "General Cimmittee" have deprived plaintiffs of their "rights" as members both "individually and collectively."

No allegation of the petition, nor any inference, implication or claim, asserts in any way that the "wrongful," "unlawful," "fraudulent," "malicious" "conspiracy" was the result of any acts that occurred in Moniteau County. It is conceded that none of the defendants were residents of or served in Moniteau County, and only one of the plaintiffs resided in Moniteau County.

 Relators urge that the only venue statute applicable is Section 508.010 RSMo 1969, V.A.M.S., which provides for venue where a defendant resides or may be found or in tort actions where the cause of action accrues. Relators further argue that no such basis for venue exists. Respondents do not urge a basis for venue exists; they urge only that venue was "waived." Plainly there exists no venue in Moniteau County. Equally plain is the law that improper venue is such a fundamental defect that it will furnish the ground for prohibition. State ex rel. Boll v. Weinstein, 365 Mo. 1179, 295 S.W.2d 62, (banc 1956).

State ex rel. Bartlett v. McQueen, 361 Mo. 1029, 238 S.W.2d 393, (banc 1951).

Thus, the controlling and dispositive question is, "Did the relators waive the obvious defect of venue?"

Relators specifically raised the issue of a lack of venue by a written motion. The pleading in question was not denominated a special appearance. It was denominated "Joint and separate motions of defendants (listing all defendants)." The first part of the pleading was a motion by defendants Dennis, Lowry and BRAC to dismiss because they had not been properly served. The second part of the motion is joined by all defendants and raises eight separate grounds for dismissal, among them jurisdiction of subject matter, capacity to sue, representation of the plaintiff class, failure to state a cause of action and that "The Circuit Court of Moniteau County is not a proper venue for this action." The pleading also raised questions of mootness as to the temporary restraining order and a request to increase the bond.

The petition for injunction and an ex parte restraining order by relator Hood as Magistrate were filed and issued September 28, 1971. The motions above set forth were filed October 1, 1971. No issue of timeliness of filing is involved.

Respondents urge the venue question was waived because no "special appearance" was utilized in asserting the venue question, by reason of relators' counsel seeking an early hearing on the motions and because defenses and matters other than venue were joined in the motion.

Respondents cite language from Jones v. Church et al., 252 S.W.2d 647 (Mo.App. 1952). Lieffring v. Birt, 154 S.W.2d 597 (Mo.App.1941); Hutchinson v. Steinke, 353 S.W.2d 137 (Mo.App.1962) which assert the principle that venue is a personal privilege which can be waived. Conceding that rule does not answer the basic question of what is required to constitute such a waiver. All of the cited cases are situations where the party claiming improper venue had taken actions *prior* to the filing of the claim of improper venue which constituted an *appearance* before raising of the issue of improper venue and thus a "waiver." In fact, in Jones v. Church, supra, the issue of improper venue was not raised until the case was on appeal.

Mahan v. Baile, 358 Mo. 625, 216 S.W.2d 92 (Mo.1948), likewise relied on by respondents is distinguishable on its facts. There, defendant had raised the issue of venue in an attachment suit, but after adverse ruling on that motion, an "Entry of Appearance" * * * "for all purposes" was filed by defendant. No answer was filed with the "appearance" and thus defendant was not entitled to a dissolution of the attachment. The court construed the action of the defendant as a "general entry of appearance and a submission to the jurisdiction" in exchange for plaintiff's consent to release of the attachment.

Respondent relies on Mahan as authority to support the assertion that the filing of motion to dismiss is a "waiver" of the objection to venue. In point of fact, the only language in Mahan in any way supportive of that position is the following:

"An 'appearance,' here strictly an 'optional appearance' (one to save or secure some right), means the coming into court by either party to the action 'but in its common annd [sic] particular use it signifies an overt act by which a person against whom suit has been commenced submits himself to the jurisdiction of the court, and is his first act therein.' 6 C.J.S. Apparances § 1, page 4. The appearance may be express or it may be implied from the defendants 'taking, or agreeing to some step or proceeding in the cause beneficial to himself * * * other than one contesting only the jurisdiction, * * *.' 6 C.J.S. Appearances § 12, page 17. Thus the mere continuing of a case by agreement after a plea in abatement is an appearance conferring jurisdiction of the person. Columbia Brewery Co. v. Forgey,

140 Mo.App. 605, 120 S.W. 625. Also, taking a change of venue and subsequently agreeing to a continuance is an appearance conferring jurisdiction of the person. Baisley v. Baisley, 113 Mo. 544, 21 S.W. 29, 35 Am.St.Rep. 726. The appearances in these instances were as effective in conferring jurisdiction of the person as the filing of an answer and counterclaim. Robinson v. Field, 342 Mo. 778, 117 S.W. 2d 308; First Nat. Bank of Appleton City v. Griffith, 192 Mo.App. 443, 182 S.W. 805." (l.c. 216 S.W.2d 94)

All of the cases cited for the general statement above were cases decided prior to the enactment of the Code of Civil Procedure in 1943. In a subsequent case, Lee Holding Company v. Wentzville Oil Co., 409 S. W.2d 210, 212 (Mo.App.1966), this portion of Mahan was said to be the older view subject to change and modification by the later cases. In "Special Appearances in Missouri," 27 Missouri Law Review 533, the writer had the following comment on that language in Mahan:

"This was a correct statement of the law prior to 1943. It is difficult, however, to see its applicability after the 1943 code. Though the language was dictum, it confuses." (l.c. 538)

That same article points out that the technique of the special appearance was a necessary device prior to the 1943 Code. Section 922 RSMo 1939, first enacted in 1855 and unchanged until 1943, provided for demurrer when a jurisdictional question appeared on the face of the petition. Settled law at that time was the rule that pleading over waived the ground of the demurrer. Section 926 RSMo 1939 provided for raising the matters of jurisdiction not appearing on the face of the petition by answer. A ground of objection appearing on the face of the record, but not on the petition itself, commonly improper service, was raised by a motion to quash. Newcomb v. New York Cent. & H. R. R. Co., 182 Mo. 687, 81 S.W. 1069 (1904).

Thus, under the cases and statutes prior to 1943, the special appearance was a vital necessity to raise any defect in jurisdiction appearing on the face of the petition or return. A plea of abatement in the responsive pleading was appropriate to raise matters not arising on the face of the petition which, requiring proof, could not be raised by demurrer since such would have constituted a "speaking demurrer" not then permitted.

Despite this analysis and the academic protestation that the dictum of Mahan, supra, was requiring cautious lawyers to continue a useless ritual by resorting to the device of special appearance, the notion has continued to this day that prudence required the use of a "special appearance" or "reservation" to avoid waiver of such questions. The reliance upon the claim of "waiver" in this case, as the sole basis for affirmance of the trial court on the issue of venue, demonstrates the strength of the notion arising from the dicta of cases like Mahan that "waiver" by joinder of other grounds or a request for affirmative relief was still a viable doctrine.

The cases which announce the current rule with respect to the issue of such waiver are State ex rel. Boll v. Weinstein, supra, and Greenwood v. Schnake, 396 S.W. 2d 723 (Mo.1965).

In State ex rel. Boll, the court held no waiver was involved when defendant failed to plead within thirty days, but that the raising of the issue in first pleading filed was sufficient.

In Greenwood, the defendant filed as his first pleading a claim of no jurisdiction coupled with a motion for more definite statement. He thereafter made discovery and secured a continuance without mentioning the issue of jurisdiction. This would clearly have been a waiver under the old cases but was held not to be, the court saying, "Having once hoisted the flag at the beginning of the journey, a litigant over whose person the event has no jurisdiction need not continuously wave the

flag at every way station along the route." Elrod v. Lafayette Elevator Company, 379 S.W.2d 852 (Mo.App.1964), holds likewise as does State ex rel. Ballew v. Hawkins, 361 S.W.2d 852 (Mo.App., 1962), both of the latter cases specifically referring to Rule 55.37, V.A.M.R., upon which relators depend and both adopting the view that joinder of other matters with the challenge to jurisdiction does not waive the jurisdictional question.

Respondent seeks to avoid the thrust of Greenwood and State ex rel. Boll v. Weinstein by asserting that there was "reservation" of the right in the former and "special appearance" in the latter.

 No language of "special appearance" or of reservation is necessary. The language of Rule 55.37:

> "A party who makes a motion may join with it the other motions provided for and then available to him. No objection is waived by being joined with one or more other objections in the motion, nor shall pleading over or entering into the trial of the merits be deemed to waive any objection properly raised by motion. . . ."

compels the conclusion that special appearance is not necessary and the "flag waving" of reservation is no longer required. No longer should the lawyer need be concerned to utilize some "ancient abracadaba" to secure the right plainly given by the rule. We hold that Greenwood, supra, and State ex rel. Boll, supra, require neither reservation in pleading, nor special appearance in asserting such defense. An appropriate motion raises and preserves the issue, even with the joinder of matters other than venue or jurisdiction of the person.

We have recently held that the device of special appearance will not serve the office of avoiding the attachment of jurisdiction over the person already acquired. State ex rel. Hughes v. Smith, 485 S.W.2d 646 (Mo.App.1972).

We likewise now hold that a special appearance is not required to preserve a proper objection to venue or jurisdiction of the person on the face of the record or by extrinsic proof; nor is it required to reassert such defects in answer. Timely motion under the Rule 55.37 preserves such question for appellate review. The preliminary writ of prohibition is made absolute.

SHANGLER, C. J., and PRITCHARD, SWOFFORD and WASSERSTROM, JJ., concur.

SOMERVILLE, J., not participating because not a member of court when cause was submitted.