## GEORGE R. HOBBS, Respondent, v. VERN WILLIAMS et al., Appellants.

Kansas City Court of Appeals, January 5, 1914.

1. **EXECUTIONS: Levy: What Constitutes.** Under our statute "levy" means the actual seizure of the property by the officer charged with the execution; that is, he must take actual possession of the goods by such acts as would subject him to an action of trespass, but for the writ. There must be at least an exercise or claim of dominion, though by mere words, the speaker having the goods within his power. Merely announcing that he is there for the purpose of making a levy, with no declaration that he does actually levy, is insufficient.

2. ————: ————: **Right of Officer to Maintain Replevin.** Unless there has been a levy of the writ upon the goods, the officer cannot maintain replevin. It is only by virtue of the levy that the officer obtains a special interest in the property sufficient to enable him to maintain the action.

Appeal from Daviess Circuit Court.—*Hon. Arch B. Davis,* Judge.

REVERSED AND REMANDED (*with directions*).

*Wilson & Wilson* and *Randall Wilson* for appellants.

*A. G. Knight, Dudley & Selby* and *O. N. Gibson* for respondent.

TRIMBLE, J.—This is a suit in replevin brought by the marshal of the city of Gilman (a city of the fourth class) against Vern Williams and Andy Williams, his son, to recover possession of a stock of merchandise, drugs and fixtures, located in Gilman. The right to the possession of the stock is claimed by virtue of a levy alleged to have been made thereon by the marshal under an execution issued out of the mayor's, or police, court of the city of Gilman upon a judgment rendered therein against Vern Williams for $1000 and costs in a prosecution wherein the verdict of a jury convicted him on ten separate and distinct counts for the illegal sale of intoxicating liquor and assessed his punishment at a fine of $100 on each count and the costs of suit. The petition charged that the defendants, after the levy of said execution upon said stock, wrongfully took exclusive possession of all of said property and wrongfully excluded plaintiff from the possession thereof, and, by threatening to kill plaintiff or do him great bodily harm, have continued to wrongfully hold possession thereof so that it became, and continues to be, impossible to obtain possession of said property without the use of great violence involving grave risk of great bodily harm to defendants.

Vern Williams filed a general denial. Andy Williams filed a separate answer, in which he claimed to be the owner of the stock and in the sole and absolute possession thereof until it was taken from him by the sheriff under the replevin writ, and prayed for a return of the stock and for damages in the sum of $1500. The reply was a general denial. The jury returned a verdict for plaintiff, upon which the trial court rendered judgment in his favor. Vern Williams abided the judgment. Andy alone appealed.

Points are made that the court erred in allowing plaintiff to file a second amended petition and in refusing to quash the replevin writ. As no objection

was made at the trial to the filing of said amended petition, and nothing was said in the motion for new trial about the failure to quash the writ, said points are not open for review now.

The main points relied upon by defendant for a reversal of the judgment are: 1. That neither the laws of the State nor the ordinances of the city of Gilman give any power or authority to the mayor or police judge of cities of the fourth class to issue executions against the property of one convicted of an offense in the city; in other words, that the police court in such city has no authority to enforce its judgment assessing a fine for a violation of a city ordinance, in any other way than by commitment of the person of the defendant in such judgment. 2. That even if such an execution is valid, the evidence fails to show a levy of the execution by the marshal, and that, unless there was a levy of the writ upon the stock, plaintiff has no right to maintain this suit for its possession. This last contention should be considered first for the reason that, if it should be held sound, there is no necessity for passing upon the other question.

Unless there was a levy of the writ upon the stock of goods the officer would have no right to maintain replevin. The mere issuance of an execution upon a final judgment will not give the officer to whom it is directed the right to the possession of any specific property. Before he can have such right and maintain any action therefor he must levy his writ upon the property. [Mulheisen v. Lane, 82 Ill. 117; Carroll v. Frank, 28 Mo. App. 69.] This is necessarily so because it is only by virtue of a levy that the execution officer can obtain a special interest in the property which will enable him to maintain replevin. Plaintiff recognizes this because his instructions required the jury to find that there was a levy of the execution as one of the essential facts to be ascertained before plaintiff could recover.

The jury's verdict in plaintiff's favor involves, therefore, the finding that there was a levy made by the marshal on the stock. Consequently, if there is any evidence whatever tending to show a levy, the question of levy or no levy is not open for consideration in this court.

Upon the question as to what is necessary to constitute a levy there is apparently much conflict among the decisions of the various States, some holding that an actual seizure is unnecessary and others that it is. Those holding to the latter view have usually been influenced by statutes bearing on the subject. Our State belongs in this latter class, because we have a statute defining the word "levy" as meaning "the actual seizure of property by the officer charged with the execution of the writ." [Sec. 2195, R. S. Mo. 1909.] And in Douglas v. Orr, 58 Mo. 573, l. c. 575, it is said: "The word 'levy' as defined by our statute means actual seizure, that is, the officer must take actual possession of the goods, and *this language would seem to exclude all idea of a constructive possession.*" (Italics ours.) And then in determining what constitutes actual possession, the court said there must be enough done by the officer to subject him to an action of trespass, but for the protection of the execution; there must be at least *an exercise or claim of dominion,* though by mere words, the speaker having the goods within his power, the officer must take actual possession which, although the goods are present, can only be done by manual acts, or by an oral assertion that a levy is intended and which is acquiesced in by those who are present and interested in the question. In Hopke v. Lindsay, 83 Mo. App. 85, l. c. 88, it is said: "To affect personal property with a lien of an execution, the officer must take that degree of manual possession of the subject-matter of his levy which the nature of the property renders practicable. If it cannot be actually seized, he must take what possession he

can, and evidence his seizure by posting notices on the property that it is levied on, or by attaching to it some other marks indicating the special property vested in him by his levy.'' In Shanklin v. Francis, 67 Mo. App. 457, l. c. 463, in speaking of what the officer must do to levy on personal property, it is said: *''He must assume dominion over it.* He must not only have a view of it, but *he must assert his title to it* by such acts as, but for the writ, would make him liable as a trespasser.'' (Italics ours.)

As said before, if there is any evidence tending to show a levy tested by the above rules, then we must hold that a levy was made. A careful and painstaking examination of the record, however, fails to disclose any evidence tending to show that a levy, within the meaning of our statute and decisions, was made by the marshal. With the execution in his possession he went down the street toward the store with the Rev. Mr. McGowan, who had just been appointed deputy marshal by the mayor. When the marshal got within about twenty feet of the front door he met the defendant, Vern Williams, on the sidewalk and told him he had an execution against the drug store. Williams whirled around saying he wouldn't allow the store to be locked up, and went back to the store and refused to let the marshal in. The Rev. Mr. McGowan, the newly appointed deputy, went inside however, and so did Charley Ray whom the marshal deputized on the spot to assist him. *Neither of these deputies, however, did any act whatever to indicate a taking possession of the store, or of any article therein as symbolical of their possession of the whole.* Nor did they assume dominion over it or assert that they levied upon it. *Nor did the marshal tell either of them to do anything to indicate an actual levying of the writ.* The marshal never got inside of the store. He demanded possession of the store which was refused. He stood at the door about five minutes arguing with them to

allow him to come inside and take possession and then went away to consult the mayor. The marshal testified:

"Q. How long did you stay there, attempting to get inside personally, before you went away the first time? Objection overruled. Q. Go ahead and tell about how long you were there before you went away the first time? A. Well, I expect it was something like five minutes. Q. Where did you go to? A. I think I saw the mayor. When I left, there was Charley Ray and Mr. McGowan inside. And the other parties I spoke of I left the first time—well, I seen—I thought there would be somebody hurt, probably, and thought there might be another way of getting at it, without hurting somebody."

After testifying that he returned with the mayor to the store and was there the second time four or five minutes, he said:

"Q. What did you do there; did you try to argue with them in regard to it, or what were you doing there that second time? A. Well, I just went back to see whether there could be anything done or not; and I told them the best thing they could do—it really was not me that was doing it—they were laying it all on me. I told him it was not really me; that it was the law taking its course. And they seemed not to think it. I think when I went back Mr. McGowan and Ray, my deputies, were still on the inside. Q. Did you read the writ to any of them more than once; the execution I mean? A. I got it about half read once, then read it again to them all, right in front of the door. I read it all over to them. All three of the Williams were present at the time. Q. Did you get close enough to see inside of the store from where you were? A. Yes, sir; I could see inside a little. Q. Were you up there in the front door? A. Yes, sir; *I expect I got in about three or four feet of the door.*"

As to what either McGowan or Ray did there, or while in the store, the marshal testified as follows:

"Q. And there was nothing in the presence of Mr. McGowan or his actions there to indicate to any of the defendants, that he was acting as an officer, was there? A. I don't know about that. Q. There was nothing on the part of Mr. McGowan that indicated to them, that he was there as an officer, was there? A. Well, I think not. Q. And there was nothing on the part of Charley Ray that would indicate he was an officer or that would lead them to believe he was an officer? A. I think they *asked* them to turn the goods over." He also testified that the defendants continued to object and protest and refuse to let him in the building until he finally went away and left the store.

There is no testimony that either of the deputies, McGowan or Ray, did anything to indicate that they levied upon the stock or any part of it. Aside from merely standing in the store while the marshal was parleying at the door, the deputies did nothing, except that Mr. McGowan said: "We are *here for the purpose of levying* on this stock of goods. And I am an officer of the law." But announcing that they were there *for the purpose of levying* was not an act of levy nor was it an oral declaration of a levy either actual or constructive. In other words, there is nothing in the evidence anywhere tending to show that a levy, either actual or constructive, was *in fact made.* There was no act done which would have made the officer, or any of them, a trespasser. There was no declaration on the part of anyone that the writ was actually levied. Merely an announcement that they were there with the writ for the purpose of making a levy, and an attempt thereafter to get the defendants to consent to it. There was no "assumption of dominion" over the stock nor an "assertion of title" to it either in words or by act of any kind.

We do not wish to be understood as holding that an actual physical taking possession or seizure of property is required to constitute a levy in a case where this is prevented by threatened force or violence on the part of those in possession; nor do we want to be counted as saying that nothing less than actual manual seizure will suffice under such circumstances. But we do say that the officer must do something to indicate that the writ *is levied,* and not content himself with merely announcing that he is there for that purpose, and then, after attempting to obtain the owner's consent thereto and failing, to go away without having done anything to show that *as a fact he did levy.* If the deputies, or either of them, while in the store and in possession of the writ or in the presence and view of the marshal who did have it, had publicly announced that, "We here and now, under and by virtue of this writ, levy upon and take possession of this stock of goods" or any announcement of similar import, and had then laid hands upon any article therein as a symbolical manucaption of the whole stock, or had done either of these things, and then the defendants, by threatening force and violence, had prevented further efforts to complete the levy in the ordinary mode, there would be strong grounds for saying that a levy was made. But that is not the case here. Nothing of this kind was done. As to the marshal, who had the writ and was in command of the deputies, the property was not where he could exercise control over it, or rather he was not where he could exercise control over the property. And, as to the deputies, who were where they could have exercised control, they made no effort to exercise or assume dominion thereover, nor did they declare that they levied. In speaking of what constitutes a levy, Freeman on Executions (3 Ed.), Vol. 2, sec. 260, says: "The property sought to be levied upon must be where he (the levying officer) can exercise control over it. And

he must exercise, or assume to exercise, dominion by virtue of his writ. He must do some act by reason of which he could be successfully prosecuted as a trespasser if it were not for the protection afforded him by the writ. . . . It is not essential that he should remove the property nor that he should touch it. It is enough that, having the property within his view, and where he can control it, *he does profess to levy and to assume control of the property* by virtue of the execution and with the avowed purpose of holding the property to answer the exigencies of the writ." And before saying this, the author says the statute of the particular State must be taken into consideration, and the above declaration is made in discussing what a levy is under the common law. So that, even in the absence of a statute requiring actual seizure, the property must be where the officer can exercise control over it and *he must profess to levy* upon and to assume control over it. [To the same effect see 8 Am. & Eng. Ency. of Pl. and Pr. 530, 531, and cases there cited.] In Westervelt v. Pinckney, 14 Wend. 123, it is held that it is not sufficient that the property be within the view of the officer and subject to his control, the officer must at the same time *assert his title* to the goods by virtue of the execution. In Pennsylvania, where no particular formality is required to make a levy, the Supreme Court of that State held that a levy on stocks was sufficient *if the sheriff announced to the debtor that he levied thereon.* [Braden's Estate, 30 Atl. 746.] In that case the stocks were not in the officer's presence or view, and presumably there was no statute defining the word "levy;" and yet, even under these liberal circumstances, a declaration that the officer did levy was necessary as well as that a list of the stocks levied upon should be made by the officer. In the case at bar no attempt was made to begin an inventory. In Camp v. Chamberlain, 5 Denio, 198, it is held that

175 Mo. App. 27

the goods must be taken possession of, either by man-ual acts, or by an oral assertion that a levy is intended. It is true there are cases where the officer did little to make a levy and yet it was held that his acts constituted a levy, but it will be found that in those cases the owner or person in possession of the property assented to the levy or did some act showing an intention to regard the levy as consummated. Of course, in that event, such person could not contend that there was no levy.

Neither can it be said that the defendants are in no position to claim there was no levy because it was their own wrongful conduct which prevented it. Their conduct did not prevent the officers from announcing that they levied. If they had done that, and then had been compelled by violence to desist from further effort, there might be something in this objection. But the marshal did not do this. He was attempting all the while to get the defendants to consent to a levy, and when they refused to consent, he desisted and finally went away without making any levy or claiming that he did so. Plaintiff realized that this was necessary because his instruction No. 2 required the jury to find that the officer notified the defendants *"that he was taking said property"* pursuant to the writ, and that at all said times said officer and his deputies or any one of them was present and *"professing to have taken said property* under the writ and assuming control thereof and to hold the same in execution of said writ," etc., before the jury could find as a fact that there was what amounted in law to a seizure and levy. The evidence in the case, however, shows that this was not done, and that there was no levy made. No more, in fact, than if an officer with an execution should meet a man on horseback in the road and should say to him, "I am here for the purpose of making a levy on that horse and I want you to consent to it" and, upon the man looking fierce and swearing that he would

die first, the officer should thereupon desist and go away without declaring that he did in fact levy on the horse. If an officer makes no levy, he cannot sue in replevin. He has no right of property previous to an actual levy. He is commanded by the writ to *levy,* not to bring a replevin suit. It follows, therefore, that the plaintiff cannot recover. This renders it unnecessary to consider the other interesting question raised by defendant as to the power of a police court in a city of the fourth class to issue an execution upon property in enforcement of its judgment against a violator of a city ordinance. Concerning this question we express no opinion or intimation either way. The judgment of the trial court is reversed and remanded with directions to render judgment for the defendant for the return of the property or the value thereof together with such damages, if any, as defendant may show has been sustained for the taking and detention thereof, such value and damages, if any, to be arrived at either by agreement of the parties or by proper trial and investigation usual in such cases. All concur.'

## ON MOTION FOR REHEARING.

Respondent, in his motion for rehearing, very earnestly presses upon our attention the point that the appellant Andy Williams is in no position to complain of the judgment because the jury, by its verdict in plaintiff's favor, has found that the stock of goods belonged to Vern Williams, and he did not appeal. Respondent says the debt for which the execution was issued was that of Vern Williams the levy was sought to be made on the goods as his property, and the verdict finds it was his, therefore, he is the only one who can complain, and as he did not appeal, his son, Andy Williams, cannot object to the judgment.

The fallacy in this argument lies in the fact that, *unless and until there was a levy actually made,* plaintiff has no right to litigate the question of who owned the stock. As no levy was made, the case should not have been submitted to the jury. There was no dispute between Vern and Andy Williams. Both swore that the latter owned it. The plaintiff had no right to dispute or litigate the question whether the one or the other owned it unless he, the plaintiff, had obtained a special interest therein by making a levy thereon. Consequently, the son, Andy Williams, has the right to object on appeal to all the steps taken to secure a judgment. True the jury by their verdict, said the property was Vern Williams'. But it was only in the event a levy was made that the jury would have any right to decide that it was Vern Williams' property and turn it over to the marshal to pay Vern's debts. If no levy was made it is no concern of plaintiff's whether Vern or Andy owned the stock, so far as *this case* is concerned. Of course we do not mean to say that it is herein judicially determined and settled that Andy Williams in fact owned the stock. All we say is that, inasmuch as there was no levy made, the defendant Andy Williams can object to the judgment on appeal since there is no one disputing his title who is entitled to do so.

We have carefully gone over the case again on the other points urged in the motion for rehearing, especially upon the one urging that the evidence shows a levy was made. As a result we are more strongly convinced than ever, if that be possible, that no levy was made, and that the conclusion reached in the opinion must be adhered to. It must, as we have no power to set aside the law or to apply it otherwise than as we find it. All concur.