STATE of Missouri ex rel. Richard MATHER, Plaintiff-Appellant,

v.

William Kenneth CARNES and Maryland Casualty Company, Defendants-Respondents,

and

Grain Valley Airport Corporation, Defendant-Respondent,

and

J. Woody and Woody's Flying Service, Defendants-Respondents,

and

Rufus Thrall, Third-Party Defendant-Respondent.

Nos. KCD 27839, KCD 27860.

Missouri Court of Appeals, Kansas City District.

May 2, 1977.

H. George Lafferty, Jr., Kansas City, Lafferty, Horowitz & Shurin, Kansas City, of counsel, for plaintiff-appellant and respondent Mather.

Joe M. Williams, Associate County Counselor, Kansas City, for defendants and respondents William Kenneth Carnes and Maryland Cas. Co.

J. Worthen DeYoung, Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, for respondents J. Woody and Woody's Flying Service.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

SHANGLER, Presiding Judge.

This appeal comes from a jury verdict for plaintiff Mather on his claim for damages against defendant William K. Carnes, Sheriff of Jackson County, and surety Maryland Casualty Company, for failure to attach an aircraft under process ancillary to commencement of an action against one Thrall for the partition of a Beechcraft airplane.

The underlying partition suit was between Mather and Thrall [a nonresident] concerning the joint ownership of the craft then tied down on an apron at the Grain Valley Airport leased to one Woody and by him to Mather. A deputy sheriff [Shuster] undertook to attach the airplane under the process sued out by Mather, but thereafter Thrall unfettered the craft and removed it from the jurisdiction.

The suit went to trial on an amended petition which pleaded three counts: Count I was against Sheriff Carnes and surety Maryland Casualty and alleged the sheriff had attached the airplane, but negligently failed to keep it in his custody; Count II alleged that the Grain Valley Airport and Woody wrongfully surrendered the aircraft to Thrall despite full knowledge of the attachment levy and the promise by Woody to deliver up the property upon the request of the sheriff; Count III proceeded on the theory that the sheriff negligently refused to take reasonable steps to retake the airplane. The defendant Sheriff Carnes brought a third-party petition against Woody for indemnity over for any liability to the plaintiff Mather from the release of the aircraft by Woody to Thrall. Woody [both in the personal and corporate capacities by which he had been named in the litigation] in turn brought a third-party action against Thrall for any liability adjudged against him to Mather or Sheriff Carnes.

At the close of the evidence for plaintiff Mather, a verdict was directed for defendant Woody, and at the close of all the evidence, the third-party claim of the sheriff was also directed in favor of Woody. These determinations effectively removed Thrall from the litigation. The single issue which ultimately went to the jury was not a pleaded theory, but on an amendment to conform with the proof: that the defendant Sheriff Carnes [and his surety] had negligently failed to attach the aircraft. The defendant Sheriff submitted the issue of the contributory negligence of plaintiff Mather in particulars. The jury returned a verdict of $17,678.93 for the plaintiff against Carnes and Maryland Casualty, the only defendants to remain.

After the trial defendants moved for judgment notwithstanding the verdict in accordance with their motion for directed verdict, or in the alternative for a new trial, as authorized by Rule 72.01(b). The trial court did not rule the motion for judgment, but granted a new trial on grounds stated in paragraphs 22(c), 24(2) and 25 of the motion for judgment incorporated by reference into the motion for new trial. In reprise, the grounds of these paragraphs are: plaintiff Mather failed to prove substantial damages; the attachment and levy were validly made as a matter of law, or abandoned by plaintiff; and that plaintiff Mather was contributorily negligent as a matter of law. The parties cross-appealed: plaintiff Mather from the grant of a new trial, and defendant Carnes and Maryland Casualty from the failure of the court to enter judgment in accordance with their after-trial motion. For our purposes, we treat the failure to rule the alternative motion for judgment as a final order of denial of that request for relief. See, *Newell v. Peters*, 406 S.W.2d 814, 819[6] (Mo. App.1966).

At the outset, we place each litigant in a proper posture. The plaintiff Mather lost a favorable judgment by the grant of a new trial to the defendants and so was aggrieved and entitled to appeal that order of the trial court. The effect of the grant of new trial to defendants Carnes and Maryland Casualty, however, was to remove an adverse judgment from against them. The denial of the motion for judgment in such case, therefore, neither constitutes a *final judgment* within § 512.020, RSMo 1969, nor adversely affects or aggrieves them to give standing for appeal. *Powell v. Watson*, 516 S.W.2d 51, 52[1–3] (Mo.App.1974). Accordingly, we dismiss the appeal of defendants Carnes and Maryland Casualty.

The dismissal does not foreclose challenge to submissibility of the case for plaintiff, however, where preserved properly by after-trial motion [*Schmittzehe v. City*

of Cape Girardeau, 327 S.W.2d 918, 920[1] (Mo.1959)] and where the record shows plaintiff cannot recover under the law and evidence, we will direct entry of judgment for defendant and spare another trial. *Bailey v. Interstate Airmotive*, 358 Mo. 1121, 219 S.W.2d 333, 336[3] (1949).

■ The grant of new trial rests solely on the ground that as a matter of law: plaintiff failed to prove damages; that an attachment was shown [or later abandoned by Mather]; that Mather was contributorily negligent. These rulings do not involve exercise of judicial discretion but only the applications of legal principles. We determine, therefore, not the propriety of a discretion, but only whether the judicial order rests on a valid or erroneous view of the law. *Highfill v. Brown*, 340 S.W.2d 656, 664[11] (Mo. banc 1960). The order for new trial postulates four grounds, that as a matter of law the evidence proved: [1] a valid attachment [2] abandonment of the attachment by Mather [3] no damages and [4] contributory negligence. The abandonment ground is premised on the two disparate reasons of ¶¶ 24(2) and 25 of the motion for judgment, and is ambivalent. The first reason [¶ 24(2)] holds that the attachment was abandoned *before perfection* by the failure of plaintiff Mather to propound interrogatories to a garnishee. The second reason [¶ 25] holds that the attachment was abandoned *after perfection* by the election of Mather to pursue other remedies to satisfy his judgment against Thrall. The first reason is logically cognate to the theory of recovery submitted—for if the plaintiff abandoned the attachment the sheriff cannot be held for that failure—and so requires our decision. The second reason, however, relates to conduct of the plaintiff after the attachment was perfected and so is altogether irrelevant to the submission—for if the sheriff validly attached, then the plaintiff fails on his only theory of recovery—that the sheriff failed to attach. Our review proceeds on this definition of the issue.

## I

## THE FACTUAL STATEMENT

The plaintiff Mather commenced a suit against nonresident Thrall to partition a Beechcraft airplane owned by them jointly. In order to subject the property to the jurisdiction of a Missouri court and to induce the appearance of Thrall, Mather flew the craft to the Grain Valley Airport in Jackson County, and ordered process of attachment to issue. Mather secured the plane with two standard locks—on the door and ignition switch—and another on the controls. He leased tie-down space for the plane for $15 per month from Woody, the manager, and retained the keys to all three of the locks. Thrall had separate keys to the door and ignition locks; Woody had no keys to the plane. Woody leased this area, the gas business, shop and office from the Grain Valley Airport Corporation. As he conceived it, Woody had no authority to keep the public out of the tie-down area. Those who leased tie-down space did not need permission to remove the plane or return it. Mather asked Woody to remove the batteries from the aircraft, but Woody was not certain he had done so. Mather made no other arrangements with Woody or anyone else at the airport about the plane nor did he tell Woody that Thrall was not to fly the craft away.

An affidavit of attachment was filed with the circuit court as to a described aircraft owned by nonresident Thrall. A letter of direction from attorney Horowitz for plaintiff Mather accompanied the affidavit with instructions that the attachment in aid of service issue for levy upon the Beechcraft airplane located at the Grain Valley Airport. The writ duly issued and, with a receipt form for the property to be taken, was delivered to Deputy Sheriff Shuster who was charged with the execution of such process. The testimony of the transaction then becomes shrouded in contradictions.

It was the testimony of Shuster that, as a matter of course in such matters, he telephoned the attorney to learn of any special directions for the attachment of the airplane, and specifically, whether the craft

was to be removed. He was told by Horowitz that the plane had been made inoperable and wanted only that the deputy obtain a receipt for the property from the airport manager. Horowitz denied that he gave any instruction other than to confirm the location at the Grain Valley Airport and for Shuster to attach the plane.

Conflict also marks the testimony by Shuster and Woody as to what passed between them at the airport. Shuster testified that when he arrived there, he handed Woody—the only person in the vicinity—a copy of the attachment and summons with instructions not to release the airplane without permission from the office of the sheriff. He never touched the plane, but was close enough to identify the craft by its numbers. He then had Woody sign a receipt in his capacity as airport manager with the explanation: "[T]hat's to keep the plane here until you get a release from the Sheriff's office." Shuster—faithful to his directions from attorney Horowitz merely to get a receipt because the plane was already inoperable—made no attempt to put locks on the craft, or to post it with attachment notice, or leave a copy of the receipt with Woody, or give him any other instructions. After Woody signed the completed receipt [which Shuster was not sure Woody read], Shuster left the airport.

Woody described this episode differently: Shuster came to the airport office lobby, pointed inquiringly at the twin-engine Beechcraft visible some hundred yards away, and Woody confirmed that was the Mather-Thrall airplane. Shuster then handed Woody some papers in a blank envelope and asked him to give the packet to Thrall. Woody never looked at the contents and had no idea an attachment was being served on the plane. Shuster then asked Woody to sign a receipt in blank and, to allay his reluctance, assured Woody that "[a]ll you're saying is that the aircraft is here". No notice was posted on the plane, nor did Shuster ever approach the craft. Neither Shuster, nor Mather, nor attorney Horowitz ever instructed him nor in any way indicated the plane was the subject of a law suit. Woody asserted that had he

known he was to be responsible for the airplane he would never have signed the receipt; and had he been aware of the attachment, he would have stripped the aircraft by the removal of propellers or other means.

In resume, Shuster testified he delivered the writ of attachment to Woody, told him not to release the plane without permission from the Sheriff, and had him sign a receipt to that effect—all in accordance with the instructions from plaintiff. Woody testified he was handed some papers in an unmarked envelope which he never read, was asked to sign a blank receipt merely to show that the plane was at the airport, and was not told by Shuster that he was responsible for the plane or that it was under attachment. *There is no dispute that Shuster posted no notice on the plane or added any locks or even touched it.*

## II

### THE ATTACHMENT

■ The plaintiff submitted on the theory that the Sheriff had failed his duty to execute the writ of attachment. The jury found in favor of this recovery, but the trial court set aside the verdict and granted a new trial on a ground that a valid attachment was shown as a matter of law. In this determination we view the evidence and all permissible inferences in the light most favorable to the plaintiff. *Rodgers v. Seidlitz Paint and Varnish Company*, 404 S.W.2d 191, 197[3, 4] (Mo.1966).

■ An attachment is a purely statutory remedy, ancillary to the main action, and provides a summary and anticipatory method to impound the assets of a defendant to facilitate the collection of a judgment against him. *Lubrication Engineers, Inc. v. Parkinson*, 341 S.W.2d 876, 878[6, 7] (Mo. App.1961); Anderson on Sheriffs, Coroners, and Constables, § 22, p. 236 (1941); 7 C.J.S. Attachment § 1, p. 185. Where the defendant is nonresident, attachment procedure serves the additional purpose to compel that person to submit to the jurisdiction of the

court upon pain of forfeiture of the sequestered property. *State ex rel. Auchincloss, etc. v. Harris*, 349 Mo. 190, 159 S.W.2d 799, 805[7–9] (1942).

The attachment procedure is defined in Rule 85 and counterpart Chapter 521, RSMo 1969. Rule 85.21(d) which rescripts § 521.-170(4) provides:

When goods and chattels, money or evidences of debt are to be attached, the officer shall take the same and keep them in his custody, if accessible; and if not accessible, he shall declare to the person in possession thereof that he attaches the same in his hands, and summons such person as garnishee.

▋ The levy of the writ of attachment on personal property under these procedures places the property *in custodia legis*. The levy required by law means actual seizure of the property by the officer charged with the execution of the writ.[1] Such a compliance has been defined in our earliest law [*Shanklin ex rel. Wetzler v. Francis*, 67 Mo.App. 457 (1896), l.c. 462]:

The actual seizure of property is alone the basis for an attachment and the jurisdiction of the court. The officer must, under the writ, take the property into actual custody and hold it until it is seized under execution after judgment. When it is capable of manual delivery and he does not take it into possession, he acquires no special property therein. He must assume dominion over it. He must not only have a view of it, but he must assert his title to it by such acts as, but for the writ, would make him liable as a trespasser. His custody must be such to exclude that of the owner.

▋ The *actual seizure* required by the statute for a lawful levy, however, does not always mean a physical manucapture of the goods, but must amount to some act which, but for the protection of the writ,

would subject the officer to an action of trespass. As expressed in the early case *Douglas v. Orr*, 58 Mo. 573 (1875) at 576:

[A]ctual possession . . . can only be done by manual acts, or by an oral assertion that a levy is intended, and which is acquiesced in by those who are present and interested in the question. A levy cannot rest in mere undivulged intention to seize the property. Something more is required. There must be possessory acts to indicate a levy, or it must be asserted by word of mouth, so that what is thus done by the officer, if not justified by the process in his hands, will make him a trespasser.

Thus, the mere declaration of an officer that he comes to levy on a stock of goods, without more, does not assume dominion over the property nor interfere with the title of the owner, and so does not constitute an actual seizure. *Hobbs v. Williams*, 175 Mo.App. 409, 162 S.W. 334, 336[6] (1916).

▋ The levy of the writ of attachment not only serves to establish the special property interest of the officer in the goods, but also puts the property out of the control of the attachment debtor and closes the goods to subsequent levy of another creditor. 70 Am.Jur.2d § 33, Sheriffs, Police and Constables. After levy under attachment process, the officer may deliver the property to a third person and take his receipt and promise of redelivery upon request. The receiptor, on principles of contract, becomes the bailee of the officer and the possession of the receiptor remains the possession of the officer. *McDonald v. Loewen*, 145 Mo. App. 49, 130 S.W. 52, 55[8] (1910); *Talbot v. Magee*, 59 Mo.App. 347, 353 (1894); *Anderson, op. cit.*, § 522. This custom of convenience saves the litigants the expense and trouble which attends the safekeeping of the property pending the proceedings and at the same time continues the lien of the

---

1. The statutory definition of *levy* given in § 513.010, RSMo 1969, relates to executions and, applied *in pari materia* to § 521.170(4), RSMo 1969, and Rule 85.21(d), also to writs of attachment. *Shanklin, supra*, (1896). In terms, the definition reads:

The word "levy", as used in this chapter, shall be construed to mean the actual seizure of property by the officer charged with the execution of the writ.

attachment levy. 6 Am.Jur.2d Attachment and Garnishment, § 500.

■■■ Although a lawful levy implies a seizure, the character of the property will determine the practical means open to the officer to place the property within his power and beyond the control of the attachment debtor. "[W]here the character of the property is such that it may be taken possession of and removed, the officer should do so, or if left in place [because ponderous or immovable], he should either remain with it, or place some one over it as his deputy or bailee, so as to exercise exclusive dominion and control of it, and to notify the public not to deal with it. But regard is always had to the character and situation of the property." *Bilby v. Hartman*, 29 Mo.App. 125, 135 (1888). Thus, the officer must take that degree of manual possession which the nature of property renders practicable. If bulk or immovability prevents actual seizure, the officer must take what possession he can accompanied by some notorious act which declares the special property vested in him by the levy. *Hopke v. Lindsay*, 83 Mo.App. 85, 88 (1899). Whatever the variety of circumstance, however, the doings of the officer cannot amount to a valid attachment unless the articles are taken into his actual custody, or are placed under his exclusive control. Freeman on Executions, Vol. 2 (1900). *Russell v. Major*, 29 Mo.App. 167, 172 (1888).

The provisions of Rule 85.21(d) embody these general principles including the rule that where personal property is capable of manual delivery the officer must take the property into his actual possession. The parties understand this rule to mean that goods are accessible [2] only when capable of manual delivery. From this premise plaintiff Mather argues that Shuster was under a duty to take the Beechcraft into his custody by the application of another lock, re-

moval of parts, or similar means. He concludes that the failure of Shuster to take the plane into his custody by such means was evidence that Shuster treated the airplane as *inaccessible*, and so breached his duty to summon Woody as a garnishee as required to perfect levy upon goods of that character. The defendants Carnes and Maryland Casualty respond that since the airplane was already locked and immovable, all that was left for Shuster to do was to declare the attachment. Furthermore, absent instructions from the plaintiff, the officer has no duty under the rule to summon a garnishee.

■■■ To the extent these positions rest on the assumption that the accessible-nonaccessible dichotomy of the rule distinguishes goods capable of manual caption and delivery from those which because of bulk or immovability cannot be so managed, they are mistaken and irrelevant to the determination of whether there was a valid attachment. The distinction the law makes between an accessible and non-accessible chattel for purposes of a valid attachment levy is this [*Westheimer & Sons v. Giller*, 84 Mo.App. 122 (1900), at 216]:

[T]hat notwithstanding personal property may be tangible and in the view of the officer and subject to manual possession, yet if it is in the possession of a third party claiming some right or interest in it, it is not so accessible in the sense of the statute [and rule] as to prevent a legal garnishment.

This same view is held by the authoritative Freeman on Executions, Vol. 2, p. 1475 (1900):

Articles of personal property may be capable of manual delivery, and yet it may be improper for the officer to take them into his possession, because to do so, interferes with the rights therein of per-

---

**2.** Rule 85.21(d): When goods and chattels . . . are to be attached, the officer shall take the same and keep them in his custody, *if accessible*; and *if not* accessible, he shall declare to *the person in possession thereof* that he attaches the same in his hands, and summons such person as garnishee.

Rule 85.21(b): It shall be the duty of the . . officer, *when* directed by the plaintiff, his agent or attorney, *to summon garnishees* in the manner set forth in the Rules relating to garnishment . . . .. (Emphasis supplied.)

**284**

sons other than the judgment debtor, as, where it is pledged to the possessor, or he holds it under a chattel mortgage.

See, also, *McGarry v. Lewis Coal Co.*, 93 Mo. 237, 6 S.W. 81 (1887).

■ Thus it is the interest claimed in the property by a third party in possession [other than the attachment debtor] and not the physical characteristics of the chattel which brings the garnishment procedures of Rule 85.21(d) into operation as a prerequisite for jurisdiction over the res. As the authorities agree, the requirement of the rule that the officer shall take accessible property and keep it in his custody does not always mean manucaption and removal. It means, rather, that the officer must take steps to remove the property from the control of the attachment debtor, and make his dominion and custody to exclude that of the owner by whatever means the character of the property allows. *Shanklin ex rel. Wetzler v. Francis; Douglas v. Orr; Russell v. Major*, all *supra; Anderson, op. cit.* p. 244.

■ In this prospective, it is clear that garnishment proceedings were not required to subject the aircraft to the jurisdiction of the court. The property was accessible and subject to levy of the sheriff by an exercise of custody. The parties agree—although to different ends—that Woody had no possessory interest in the airplane. The defendant Carnes asserts this fact to justify his failure to summon Woody as garnishee, while Mather uses it to show there was no attachment. The *inaccessible* provision of Rule 85.21(d) assumes that someone other than the attachment debtor has actual possession of the property. As it was, only Mather and Thrall had such an interest and the purpose of the attachment was to prevent Thrall from removal of the craft from the jurisdiction pending the partition suit. There was no one other than the plaintiff himself, therefore, who could qualify as garnishee—and to require his summons would be an absurdity.

■ We conclude that the absence of a garnishment does not bear on the decision of this litigation, either as evidence of abandonment or the failure to attach, as the defendants alternatively propose.

■ We determine also that the evidence shows conclusively there was no valid attachment of the aircraft, not because the garnishment failed, but because Shuster did no act that amounted to a levy. The evidence shows no dispute that other than view the craft, Deputy Shuster took no other step for actual seizure or—because of the bulkiness—symbolic possession of the property. Shuster posted no notice of attachment on the plane, nor added any locks, nor removed any part, nor did any other act which excluded the custody of the attachment debtor. The delivery of enclosed papers to Woody and his signature on a receipt which promised return of the plane upon request of the Sheriff are the only attempts by Shuster to bring the property under his authority.

■ It is within the power of an officer, *after* levy under executory process, to deliver the property to a third person as keeper and take a receipt for redelivery. *Anderson, op. cit.*, § 522. In such case, however, the possession of the receiptor derives from the prior possession of the officer—which comes from a levy, actual or symbolic. *Shanklin ex rel. Wetzler v. Francis, supra,* l.c. 465. But where, as here, the officer made no levy and Woody had no possession to give, the officer had none to receive from him under the writ and none to deliver to his keeping.

The evidence shows clearly that Woody never exercised any physical control over the plane, nor had any right to do so. Mather flew the plane to the airport, tied it down himself, and locked it. Mather and Thrall both had keys to two of the locks but Mather had the only key to the lock on the controls. Woody had no keys to the plane. He rented tie-down space for planes, space he himself leased from the Grain Valley Airport. Neither Woody nor any one else at the airport had any control over the movement of the aircraft to and from the airfield. Woody had no claim check system; any one with access to the keys could remove a plane from the area without his permission.

In effect, then, Mather and not Woody had possession of the plane, since he retained all means to control the movement of the craft.

 Mather merely leased space from Woody, much like an automobile owner rents parking space by the month and keeps the keys to his car. The parking lot owner does not become the bailee of the vehicle because there is no delivery of possession to him from the owner of the car. In such case the operator of the lot has no right to exclude the owner of the car or anyone else who comes with the keys. *Weinberg v. Wayco Petroleum Company*, 402 S.W.2d 597, 599[4–6] (Mo.App.1966). Similarly, neither did Woody have any right to control the airplane. The evidence shows conclusively that Woody was not bailee for Mather, and without some delivery of control of the plane to him by Shuster, he could not become bailee for the Sheriff either. The declaration by Shuster that he attached the airplane in the hands of Woody was only a paper levy and without legal effect because Woody had no possession to give. In turn, in the absence of some public, open, unequivocal—or even symbolic—act of dominion, Shuster had no custody of the plane and could make no delivery to Woody. That he required a receipt was not an act of dominion; first, the officer must have sufficient possession of the goods before he can entrust them to another. *Talbot v. Magee*, 59 Mo.App. 347, 352 (1897); *Mickelson v. Williams*, 50 Wash.2d 402, 312 P.2d 656, 658[1–3] (1957); *Anderson, op. cit.*, §§ 522, 523.

As a matter of law, the airplane was *accessible* to the levy of the officer within Rule 85.21(d) but he failed his duty to take the property into custody under the writ of attachment. The verdict for plaintiff on that submission was the only acceptable response to the evidence, and the order for new trial which declares a contrary view is erroneous.

## III

### CONTRIBUTORY NEGLIGENCE

At the trial the defendants responded to the claim that Shuster neglected his official duty by evidence that his conduct under the writ was directed by counsel for Mather, and so defendants were discharged from liability for any failure to make a levy. This theory of defense was couched in terms of contributory negligence and was submitted by Instruction No. 5:

Your verdict must be for Defendant Carnes [3] if you believe:

First, plaintiff or his attorney either: instructed Deputy Sheriff Shuster as to the procedures to be followed in attaching the airplane, which instructions Deputy Shuster followed using ordinary care, or assumed the responsibility for the custody and keeping of the airplane, or failed to instruct Deputy Shuster for the disposition of the airplane, or made it impracticable for Deputy Shuster to take control of the airplane, or told Deputy Shuster that the airplane would be safe and secure at the Grain Valley Airport in the expectation that he would rely on such information, and

Second, the conduct of the plaintiff or his attorney in any one or more of the respects submitted in paragraph First was negligent, and

Third, Such negligence of plaintiff or his attorney directly caused or directly contributed to cause the damage plaintiff may have sustained.

 As a rule, the duty of the sheriff to do the act sought by the writ is ministerial according to its terms and does not allow him discretion. 70 Am.Jur.2d Sheriffs, Police and Constables, § 31. The officer is bound to serve the writ, and his failure to do so makes him prima facie liable. *State ex rel. Planet P. & F. Co. v. Harrington*, 44 Mo.App. 297, 300 (1891); 80 C.J.S. Sheriffs and Constables § 61. The officer who executes according to the mandate of a writ is agent for neither party but a surrogate of the law. *Sorrells v. Irion*,

---

3. No comparable submission was given for defendant Maryland Casualty Company.

216 S.W.2d 1021 (Tex.Civ.App.1949). A party who orders a writ of attachment has a right to direct how the levy is to be done and the property cared for, but he is under no duty to do so. 7 C.J.S. Attachment §§ 214, 281; *State v. Clark*, 2 Terry 246, 20 A.2d 127, 130[15–17] (Del.1941). Where the plaintiff does give directions, compliance by the sheriff relieves him of liability to the plaintiff. 80 C.J.S. Sheriffs and Constables § 54; *Citizen's National Bank v. Loomis*, 100 Iowa 266, 69 N.W. 443 (1896). Where the officer attempts to escape liability on the ground that he complied with these instructions, he has the burden of proof as to them. 80 C.J.S. Sheriffs and Constables § 54, p. 232.

█ Instruction No. 5, in effect, exonerates the Sheriff from failure of the deputy to execute the writ of attachment according to its terms on the theory that Shuster followed the instructions of the plaintiff or his counsel for that purpose. It was an issue [that his deviation from the mandate of the writ was so justified] on which the defendant Sheriff had the risk of nonpersuasion, and so was properly submitted as an affirmative defense.[4]

█ The initial clause of paragraph First of Instruction No. 5 postulates that plaintiff Mather was negligent and not entitled to recover if the jury find that Shuster merely followed the directions of attorney Horowitz for the service of the writ. The evidence on this issue was in direct conflict: Shuster testified that before he undertook service he telephoned Horowitz for reassurance that the airplane was still at the Grain Valley Airport and to learn whether the attorney would accompany him for the levy. According to Shuster, Horowitz told him the airplane remained at the airport, that other occupations kept him from attending him, and that the airplane had already been disabled so that Shuster need only serve the attachment writ upon

Woody and declare to him the levy of the aircraft. Horowitz denied any directions other than to confirm the presence of the airplane and for the deputy to attach that property under the writ. This made up a jury issue which was decided for the plaintiff. The new trial order of the court which found that the plaintiff was contributorily negligent as a matter of law under Instruction No. 5 assumed that the evidence of the Sheriff was true and that of the plaintiff untrue, an erroneous conclusion of law in the face of the disputed evidence. There was a sufficient basis in proof for the jury verdict for plaintiff on this issue.

█ The remaining four clauses of paragraph First of Instruction No. 5 either misstate the law or find no support in the evidence. There was no proof, even from the defendants, that Mather or his counsel assumed responsibility for the custody and keeping of the airplane or made it impracticable for the deputy to take control of the property, or that the craft would be safe and secure at the airport—unless such can be inferred from the evidence that Horowitz had informed the deputy that the airplane had already been disabled. Nor, as Instruction No. 5 would have it, does the law require a plaintiff who has the aid of a writ of attachment to instruct the officer how the process shall be executed or how the property shall be kept. 70 Am.Jur.2d Sheriffs, Police and Constables, § 31. The duty of the sheriff under a writ is fixed by substantive law, and once process comes into his hands, he must execute the writ according to its mandates. Nor will custom or practice [as defendants undertook to show] override the requirements of the law. *State v. Clark*, 2 Terry 246, 20 A.2d 127, 139[9, 10] (Del.1941). It is only when the plaintiff—who had the protection and benefit of the writ—directs the sheriff to a course other than the law requires under it,

---

**4.** Instruction No. 5 casts this defense in terms of contributory negligence, perhaps induced by Instruction No. 3 which directs recovery for plaintiff for negligent failure to execute the writ of attachment. The defense theory was more properly submissible as an affirmative [third method] converse which postulates an ultimate issue supported by independent evidence which, if true, defeats the claim asserted by plaintiff. See, MAI 33.01 Converse Instructions—General Comment; and also MAI 33.05.

that the officer is relieved from liability for failure to execute the process according to its terms. That was the essential issue contended by the defendants and submitted by Instruction No. 5. It was a question, we have said, which was disputed by the substantial evidence of the parties and which was concluded for the plaintiff by the jury verdict. The trial court erred in its determination that the issue was concluded for the defendants as a matter of law.

## IV

### DAMAGES

The final ground for the grant of new trial sustained ¶¶ 22(c) and 25 of the motions for judgment and new trial which contends that plaintiff Mather failed to prove damages as a matter of law. The arguments on this element of the case assume three aspects: (1) that plaintiff has no cause of action against Sheriff Carnes and so is entitled to no damages; (2) if a cause of action is assumed, plaintiff has proved no damages and is at best entitled to nominal compensation; or (3) alternatively, damages are limited to the $9,000 to $12,500 interest Thrall had in the airplane.

 The first assertion suggests that the failure of Mather to post an attachment bond in the partition action after Thrall on two occasions submitted his person to the jurisdiction of the court resulted in dissolution of the attachment by operation of Rule 85.04 and an abandonment of any cause of action against the Sheriff for failure to perfect a remedy no longer available to the plaintiff.

Rule 85.04 [and § 521.050] provides that when any writ of attachment has been issued against a nonresident and the plaintiff has given no bond, the attachment shall be dissolved as of course, and the . . . goods . . . of the defendant taken or levied upon under such writ of attachment shall be released therefrom upon the defendant entering his appearance and filing his answer to the merits of the case . . .

unless the plaintiff shall file a bond in the sum and within the time provided by the rule. The defendants contend that Thrall submitted himself to the jurisdiction of the court twice during the pendency of the partition action; once by his Motion to Quash Service, and again when he was personally served within the venue as a defendant in that action.

Mather sued Thrall for partition of the aircraft but was unable to obtain personal service upon him because Thrall was then nonresident. The affidavit of attachment in aid of service then caused a writ of attachment to issue for execution upon the aircraft then within the venue of the suit. In due course, a summons and attachment petition were served upon Thrall by mail to his Texas address. Thereafter a document with the caption "Motion to Quash Service" was received in the cause by the circuit clerk of the court where the partition pended. The signature of attorney upon that paper, as the parties do not dispute, was that of a Pecos, Texas, practitioner. That document sought quashal of the service on the ground that Thrall "was not served with a Citation as is provided by law but received a notice in the United States mail". After signature, an appendix in irregular form recited that subject to the action of the court on the motion to quash service, the defendant Thrall moved for judgment on his denial of every allegation of the petition.

The defendants Carnes and Maryland Casualty contend that this pleading was an entry of appearance by Thrall in the partition action and so operated to dissolve the attachment in the absence of bond by Mather as provided by Rule 85.04.

This argument is flawed in several particulars. We assume the document on file, however imperfectly expressed, undertook to join the objection to the jurisdiction over the person with a denial of the merits of the claim. This procedure is sanctioned by Rule 55.27 and supplants the technical practice whereby a defendant who disputed the jurisdiction of the court over his person was required to make a special appearance for that purpose or risk waiver of the objection

by any act or omission which tended to benefit the defendant in the litigation. [See the informative discussion of the new procedure rationale in *State ex rel. Dennis v. Snodgrass*, 501 S.W.2d 553 (Mo.App.1973) and *Greenwood v. Schnake*, 396 S.W.2d 723 (Mo.1965).] The clear purposes of Rule 55.-27, therefore, are to limit successive motions—and so encourage a parsimony of suit time—and to protect against the snares of technical pleading—and so diminish the risk of unintended waiver. [See Vol. 2A Moore's Federal Practice (2d ed. 1975), p. 23.19, ¶ 12.12; comment on Federal Rule 12(b)—comparable to our Rule 55.27; see, also, *Greenwood v. Schnake, supra*, l.c. 726.]

It is evident, therefore, that the very purpose of the joinder of motion to the jurisdiction and responsive pleading to the merits allowed by Rule 55.27 is to keep the jurisdictional dispute vital and uncompromised even to final determination on appeal. *State ex rel. Dennis v. Snodgrass, supra*, l.c. 558; *Greenwood v. Schnake, supra*, l.c. 726. As it happens, in this case the motion to quash—other than the bare pleading—was never suggested to the court or pressed to a ruling. The joinder of the responsive pleading to the merits with the motion to the jurisdiction did not constitute an *appearance* within the meaning of Rule 85.04 so as to require the plaintiff to post a bond to continue the attachment.

■ We conclude also that the Motion to Quash submitted on behalf of the defendant in the litigation by an attorney not a member of the Missouri bar and unaccompanied by the appearance of a local counsel violates Rule 9.03 and suffices, without more, to nullify the Motion to Quash Service. 7 C.J.S. Attorney and Client § 16b; *McKenzie v. Burris*, 255 Ark. 330, 500 S.W.2d 357, 359[1] (1973); *Niklaus v. Abel Construction Company*, 164 Neb. 842, 83 N.W.2d 904, 911[11–12] (1957). That the question of professional qualification to act as counsel for a party to the litigation was not raised by the plaintiff until his appeal and brief does not diminish the power of a court to act, even on judicial notice alone, on a matter so vital to the public protection.

*Curry v. Dahlberg*, 341 Mo. 897, 110 S.W.2d 742, 746[1–3] (banc 1937); *Bennie v. Triangle Ranch Co.*, 73 Colo. 586, 216 P. 718[1] (1923); *Colton v. Oshrin*, 155 Misc. 383, 278 N.Y.S. 146, 147 (1934).

■ The defendants argue the attachment was dissolved by the operation of Rule 85.04 yet another time, when Mather obtained personal service on Thrall within the jurisdiction. There can be no doubt that Thrall was finally subjected personally to the judgment of the court in December of 1971, but only after he had removed the airplane from Missouri into Texas. By that time the cause of action against the Sheriff for nonperformance of duty under the writ of attachment had already accrued to Mather, and the subsequent personal appearance of Thrall in the partition suit could not mitigate for the loss of goods absolutely available for the satisfaction of judgment.

■ The defendants further argue that the present cause against the Sheriff is premature because begun before final judgment in the partition suit—and so before the extent of the ultimate liability for nonperformance of the writ was determined—and before plaintiff made any initiative for the Sheriff to recover the plane from Texas. These arguments are of no effect. The judgment in the partition suit was entered before the trial of the action against the Sheriff, and so that element of his liability was already established. Furthermore, the plaintiff was under no requirement to regain the asset lost by negligence of the Sheriff. Nor, as the defendants suppose, was there a duty on the plaintiff after judgment in the partition suit to seek an order for the return of the airplane for sale, if for no other reason than because the property was never taken by the Sheriff into *custodia legis*. This entire congeries of argument assumes a valid levy, a conclusion which the evidence does not allow.

■ Point (2) assumes the cause of action by Mather against the Sheriff but contends he proved no damage to the aircraft by its removal to Texas. This argument misconceives altogether the nature of

the cause of action which Mather asserts. The plaintiff does not due for damage to property seized under a writ and then injured by some intermediate act [See, 80 C.J.S. Sheriffs and Constables § 78], but for the failure of the officer to take the property into custody altogether. That is, the plaintiff sues because the airplane has been placed beyond his reach for the satisfaction of the partition judgment against Thrall. The extent of liability for failure to execute process is the amount of the judgment debt or the value of the property, if that be less. 80 C.J.S. Sheriffs and Constables § 78, pp. 274–5. There can be no doubt that an airplane in Texas which was meant by the writ to be sequestered and kept as the special property of the sheriff for satisfaction of an anticipated judgment was lost to the plaintiff by that removal.

The third point on damages contends that the damage award was a duplication and excessive. The jury verdict was returned in response to MAI 4.01 which directs an award in "such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained as a direct result of the occurrence mentioned in the evidence". The verdict for plaintiff was for $17,678.93 and rests on this evidence: At the time of default judgment against Thrall in the partition suit, the plane was worth $23,000. Mather was owed $9,438.43 by Thrall on the plane and was given a money judgment in that amount, which left $13,561.57 to be divided equally between the two as the result of the partition sale—$6,780.78 to each owner. Thus at the default judgment Mather was entitled to $16,219.11 plus interest for a total of $17,678.93. The defendants complain that the verdict amounts to a double recovery because the award merely duplicates that already allowed in the partition action against Thrall.

■■■ There is no double recovery here. It is an established principle that there may be only one satisfaction for one injury [*Haley v. Byers Transportation Company*, 394 S.W.2d 412, 416[5, 6] (Mo.1965)]; but as long as the judgment for that injury remains unsatisfied, all means given by law are open to the creditor for requital of that debt. 49 C.J.S. Judgments § 585, p. 1071. That it was open to Mather to enforce the judgment against Thrall for his adjudicated interest in the airplane, did not preclude his action against the Sheriff for the same damages. See 80 C.J.S. Sheriffs and Constables § 146e. And if Mather succeeds in enforcement of the judgment against surety Maryland Casualty Company for the default of the Sheriff, the defendant surety becomes subrogated to any right Mather has against judgment debtor Thrall. These principles of law prevent a double recovery. 83 C.J.S. Subrogation § 60, p. 711.

■■■ The parties also contend over the measure of damages recoverable against the sheriff in such an action. They both agree that an officer who negligently loses control of property for levy becomes liable to the extent of the injury. The explicit standard for damages in such cases, recognized in state to use of *Armstrong v. Langdon*, 57 Mo. 353, 356 (1874), is given in 80 C.J.S. Sheriffs and Constables § 84, p. 285:

A sheriff who voluntarily releases or negligently loses control of property levied on so that it is not available for the satisfaction of an execution is liable to the execution plaintiff for the amount of the debt and costs unless the property seized was not sufficient to satisfy the debt, in which case the measure of damages is the value of the property.

The defendants contend this principle limits the liability of the Sheriff to only the one-half interest Thrall had in the plane and does not extend to his entire indebtedness to Mather adjudicated by the partition judgment—that is, the one-half interest in the craft plus outlays for the plane made by Mather for Thrall during their joint ownership. This contention overlooks that an attachment in aid of service not only serves to induce the defendant to appear for personal judgment but also impounds the property for plaintiff in anticipation of *satisfaction of the judgment debt*. It was not the Thrall interest in the plane which was lost

to plaintiff from failure of the Sheriff to attach, but rather the $7,678.93 Mather interest adjudicated by the partition judgment. In sum, the value of the Mather claim in the airplane was his measure of damage against the Sheriff, and it was this value which the jury awarded as damages. This verdict was returned on evidence by the owner Mather as to the value of the airplane, and so the return of compensation was based on competent and sufficient proof. *Coach House of Ward Parkway, Inc. v. Ward Parkway Shops, Inc.*, 471 S.W.2d 464, 473[6, 7] (Mo.1971).

The final contention on this point asserts that the damages instruction given in the form of MAI 4.01 which directs compensation to plaintiff for damages sustained as a direct result of "the occurrence mentioned in evidence" does not sufficiently identify for which occurrence the Sheriff is to be held liable and so misleads and confuses. There may be cases where the evidence shows two causes for the injury to the plaintiff but only one of which was due to the conduct of the defendant. In such cases, the damages instruction must be modified in accordance with MAI 4.01 Notes on Use to describe the occurrence produced by the defendant. *Jurgeson v. Romine*, 442 S.W.2d 176, 178[4, 5] (Mo.App. 1969). The posture of the proof here does not require that modification. The only *occurrence* to be found by the jury under the theory of the instructions was whether or not Shuster failed to attach the airplane under the writ. This point is denied.

## VI

## OTHER NEW TRIAL GROUNDS

We have concluded that the trial court erroneously ordered a new trial on the grounds specified in his order. The defendants asserted other grounds for such relief in their post-trial motions which the trial court did not allow. They now reassert them on appeal to support the new trial order. As respondents, the Sheriff and Maryland Casualty may defend the action of the trial court by grounds other than those specified by the court, provided they were properly alleged in the motion for new trial and preserved. *Overton v. Tesson*, 355 S.W.2d 909, 913[4–6] (Mo.1962). These conditions for our review have been met here.

The first of these points contends that the plaintiff, by failure to bring the action in the name of the State, did not comply with the mandate of § 522.020 RSMo 1969, that any person who is authorized to prosecute a suit to his own use on any official bond *shall sue in the name of the state*. There is no doubt that the action commenced by plaintiff Mather against Carnes and Maryland Casualty for the neglect of the Sheriff is authorized by § 522.010, so that the plaintiff falls within the contemplation of § 522.020. It is the contention of the defendants that because § 57.020 requires every Sheriff in the state to give bond to the state with sufficient surety, the State of Missouri is the obligee of the bond and the only real party in interest. They conclude that this defect in pleading is fatal to the cause of action by Mather.

We believe that the argument of real party in interest misleads and confounds the realities which this action presents. The real party in interest provisions of Rule 52.01 and § 507.010 are intended to enable those directly interested in the subject matter and entitled to reap its fruits to maintain the action. *Holt v. Myers & Black Contracting Co.*, 494 S.W.2d 430, 435[1] (Mo.App.1973). There can be no doubt that § 522.010 which permits persons injured by the neglect of any officer to proceed against him and his sureties was designed to redress private injury. §§ 522.-010–522.080. That is to say, in such actions, the person who seeks redress is the real party in interest.

At common law only the obligee named on the bond of a public official could maintain an action on that obligation. 67 C.J.S. Officers § 174. Our statutes have since enabled any person injured by the neglect of an official to proceed to suit in the name of the state to his own use. §§ 522.020–522.080. The law treats such a suit on an official bond as a private action

which results in a private judgment and incurs private costs. § 522.080. The role of the state as obligee on the bond is only nominal in such proceedings. The earliest cases [*State to use of Russell v. Moore*, 19 Mo. 369 (1854) and *Meier v. Krum*, 21 Mo. 112 (1855)] treat the state as a trustee to whom the obligation of the bond is payable for the benefit of those injured by official misconduct. The failure to join the state in this nominal status in the proceeding to the use of the injured person was a defect in party-plaintiff and subject to correction by the extant rules of pleading. Under the archaic procedure of those earliest cases, the defect was raised by demurrer and dismissal of the action could result. These decisions are reported with such brevity that they fail to define at what stage of the litigation this issue was raised. See, e. g., *Meier v. Krum*, 21 Mo. 112 (1855) and *Sickles v. McManus*, 26 Mo. 28 (1857).

The more recent cases on the subject treat the failure to sue in the name of the state as a defect of party on the face of the petition, subject to the general rule that such a defect is waived by an answer to the merits. *State ex rel. Jones v. Mallinckrodt Chemical Works*, 249 Mo. 702, 156 S.W. 967, 974[2, 3] (Mo.1913). In that case, objection to failure by a city attorney to sue in the name of the state on an action to revoke a corporation charter was held waived by the answer of defendant on the merits. The failure to raise a claim of defect of parties by proper pleading, formerly by demurrer or answer, and now by motion or answer, waives that objection. *Ray v. Nethery*, 255 S.W.2d 817, 819[3, 4] (Mo.1953). It is noted that the defendants Sheriff and Maryland Casualty first raised the nonjoinder issue of the state as a party-plaintiff by oral motion to dismiss at the close of the Mather evidence. The objection came too late; the rule of waiver of defects of parties applies with equal effect to actions brought by an aggrieved party on an official bond under §§ 522.010–522.150.

Finally, the defendants contended in the motion for new trial, and now on appeal, that Instruction No. 3 which directed a recovery for Mather if the jury find

First, that the defendant Carnes was directed to attach the airplane, and

Second, that defendant Carnes failed to attach said airplane, and

Third, that defendant Carnes was thereby negligent . . .

submitted an abstract statement of law and not propositions of fact for determination by the jury. The argument on this point does not condemn the instruction for violation of the general principles which underly MAI but on the contention that, as a matter of law, the evidence proved an attachment and so the submission was error. We need not respond again to a subject already amply treated, nor do we undertake to reconstruct the propositions of Instruction No. 3 after the precepts of MAI. The point does not call for such a response and our decision on the evidence precludes it. As a matter of law, there was no attachment: the parties do not dispute that Shuster made no physical levy on the aircraft—by post of notice, addition of a lock, removal of a part, or any other such means. The attempt by Shuster at a symbolic levy by declaration of attachment of the plane in the hands of Woody was not effective simply because Woody had no property in his possession subject to attachment under the writ. There was no act done under the writ which was a levy; Shuster never put the airplane within the dominion of the law.

The only aspect of the attachment transaction which gave rise to a factual dispute was whether the conduct of the Sheriff under the writ was directed by counsel for Mather. If so, those special instructions to serve the papers on Woody and declare the attachment in his hands superseded the mandate of the writ and the failure to levy was attributable to Mather himself. This was the very fact issue asserted as a defense by the Sheriff and Maryland Casualty by contributory negligence Instruction No. 5 and rejected by the jury.

The judgment is reversed and remanded with directions that the trial court enter judgment for plaintiff according to the verdict of the jury.

All concur.